OPINION



No. 04-06-00206-CV



THE CITY OF SAN ANTONIO,


Appellant



v.



EN SEGUIDO, LTD.,


Appellee



From the 37th Judicial District Court, Bexar County, Texas


Trial Court No. 2005-CI-09689


Honorable Andy Mireles, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: March 14, 2007 


REVERSED AND REMANDED


 The City of San Antonio appeals the trial court's summary judgment which declares that the
regulations in effect at the time a 1971 subdivision plat was filed control the development of certain
property. The City generally contends that the trial court erred in granting the motion for summary
judgment filed by En Seguido and asserts: (1) En Seguido did not have vested rights to rely on the
regulations in effect in 1971; (2) if En Seguido had vested rights, the rights were subject to certain
exemptions; (3) the Development Rights Permit issued to En Seguido was void; (4) a vested rights
determination as to one tract of land is not relevant to another tract; and (5) the trial court erred in
denying the City's motion for continuance. Because genuine issues of material fact were raised by
the evidence, the trial court erred in granting summary judgment. Accordingly, we reverse the trial
court's judgment and remand the cause to the trial court for further proceedings.

Background


 In August of 2004, En Seguido purchased approximately 27 acres of land commonly referred
to as the Windcrest Heights Subdivision. On April 21, 1971, the prior owner filed a subdivision plat
for the land, and the City approved the plat in May of 1971.

 In November of 1999, City Public Service confirmed the subdivision could receive gas and
electric supply lines, and Southwestern Bell Telephone Company also confirmed that the subdivision
was within its service area. On May 16, 2000, the prior owner applied to the City's Planning
Department for a Development Rights Period ("DRP") under City ordinance 86715. The City's
Planning Department issued DRP permit number 459 and stamped the subdivision plat with the
permit. In June of 2000, the San Antonio River Authority ("SARA") recommended the plat for
approval and accepted the sanitary sewer plan and profiles for the project. The same year, the prior
owners dedicated a public easement to the City for electric and gas distribution and service facilities
and conveyed a portion of the property to Bexar County for purposes of widening the road to
enhance access to the subdivision.

 After purchasing the land in 2004, En Seguido entered into a sewer agreement with the
SARA and paid $113,050.00 in impact fees for sewer connections to service the 154 lots into which
the subdivision was to be divided for the development of single family residential homes. When a
dispute arose between En Seguido and the City with regard to En Seguido's ability to rely on the
1971 land use regulations, En Seguido filed a declaratory judgment action. The trial court granted
a partial summary judgment in favor of En Seguido. The trial court subsequently severed all other
claims into another cause making the partial summary judgment final and appealable.

Standard of Review


 We review a trial court's summary judgment de novo. Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 156-157 (Tex. 2004). When reviewing a summary judgment, we take as true all
evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any
doubts in the nonmovant's favor. Id. The party moving for summary judgment bears the burden to
show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of
law. Id.

Continuance


 The trial court may order a continuance of a summary judgment hearing if it appears from
the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit
facts essential to justify his opposition. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d at 161. 
When reviewing a trial court's order denying a motion for continuance, we consider whether the trial
court committed a clear abuse of discretion on a case-by-case basis. Id. The following nonexclusive
factors are considered when deciding whether a trial court abused its discretion in denying a motion
for continuance seeking additional time to conduct discovery: the length of time the case has been
on file, the materiality and purpose of the discovery sought, and whether the party seeking the
continuance has exercised due diligence to obtain the discovery sought. Id. Denial of a continuance
based on lack of time to prepare when the party had at least 21 days notice of the summary judgment
hearing is generally not an abuse of discretion. Esquivel v. Mapelli Meat Packing Co., 932 S.W.2d
612, 616 (Tex. App.--San Antonio 1996, writ denied).

 En Seguido's motion was originally set for hearing on August 24, 2005. On August 8, 2005,
the City filed a motion stating that it needed additional time for discovery because the lawsuit had
only been on file for two months. The motion referenced the ten people listed in En Seguido's
responses to the City's requests for disclosure as people having knowledge of relevant facts. The
motion requested a continuance of at least ninety days.

 The hearing on En Seguido's motion for continuance was not held on August 24, 2005, but
was re-set for November 7, 2005. The City re-urged its motion for continuance prior to the
November hearing. At the hearing, however, counsel for En Seguido stated that the November 7,
2005 date was selected pursuant to a Rule 11 agreement between the parties, and the City did not
object to this statement. See Banda v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997). Furthermore, En
Seguido asserted that eight of the ten individuals listed as persons with knowledge were employees
of the City or governmental employees. The City had taken the depositions of the two individuals
who were listed as associated with En Seguido. Finally, En Seguido noted that the City was given
the ninety days requested in the initial motion for continuance due to the reset. Based on the
foregoing, the trial court did not abuse its discretion in denying the motion for continuance.

Vested Rights


 In its first issue, the City contends that En Seguido did not have any vested rights in
development based on the 1971 plat. The City asserts that no rights were vested because: (1) En
Seguido was not completing the same project identified in the 1971 plat and the 1971 approval was
for a specific project not for the property; (2) the 1971 plat was not a required permit that would
trigger vested rights; or (3) the project identified in the 1971 plat had become dormant. En Seguido
counters that the City's interpretation of when rights vest is based on an overly narrow reading of
the term "project." En Seguido also responds that the 1971 plat was a required permit and the
project had not become dormant.

 In pertinent part, section 245.002 of the Texas Local Government Code requires a regulatory
agency to consider a permit solely based on the regulations in effect at the time a plan for
development of real property or plat application is filed with a regulatory agency. Tex. Loc. Gov't
Code Ann. § 245.002(a)(2) (Vernon 2005). Section 245.002 further provides:

 If a series of permits is required for a project, the orders, regulations, ordinances,
rules, expiration dates, or other property adopted requirements in effect at the time
the original application for the first permit in that series is filed shall be the sole basis
for consideration of all subsequent permits required for the completion of the project. 
All permits required for the project are considered to be a single series of permits. 
Preliminary plans and related subdivision plats, site plans, and all other development
permits for land covered by the preliminary plans or subdivision plats are considered
collectively to be one series of permits for a project.


Tex. Loc. Gov't Code Ann. § 245.002(b) (Vernon 2005). The term "project" is defined by the
statute as:

 An endeavor over which a regulatory agency exerts its jurisdiction and for which one
or more permits are required to initiate, continue, or complete the endeavor.


Tex. Loc. Gov't Code Ann. § 245.001(4) (Vernon 2005). The term "permit" is defined in part as:

 [a] form of authorization required by law, rule, regulation, order, or ordinance that
a person must obtain to perform an action or initiate, continue, or complete a project
for which the permit is sought.


Tex. Loc. Gov't Code Ann. § 245.001(1) (Vernon 2005).

A. Do rights vest in a project or in property and how broadly is the term project defined?

 The City argues that based on the foregoing statutory provisions and definitions, rights are
vested in a particular project not in the property on which the project is undertaken. Therefore, if
the project to be undertaken by En Seguido is different than the project for which the 1971 plat was
filed, En Seguido has no vested rights to develop the project under the regulations in effect in 1971.

 The City relies in large part on a 2001 attorney general's opinion. In JC-0425, the issue
presented was whether real property for which an original application for a first permit had been filed
remained subject to the regulations that were effective at the time of the filing although the project
has been conveyed to a different owner. Op. Tex. Att'y Gen. No. JC-0425 (2001). The attorney
general stated, "it is irrelevant whether the owner who files the original application for the first
permit retains the property for the duration of the project or conveys the property." Id. The attorney
general noted that the term project does not indicate that a project is specific to a person or
terminates each time the property is sold. Id. The attorney general further noted that the term
"project" is defined as an "endeavor" which is commonly defined as "the action of endeavoring;
effort, or pains, directed to attain an object." Id. After concluding that the transfer of ownership did
not affect the regulations applicable to the project, the attorney general further stated:

 ... neither a purchaser nor an owner may alter a project without the possibility of a
consequence. If a project is altered by a purchaser, for example, the development
regulations are no longer locked in under chapter 245 and current development
regulations apply.


Id. Therefore, the attorney general's opinion supports the City's argument that a permit is for a
specific project, and a change in the project affects any vested rights.

 En Seguido argues that the City's definition of the term "project" is overly narrow. Looking
to the "plain and common meaning of the statute's words," see City of San Antonio v. City of Boerne,
111 S.W.3d 22, 25 (Tex. 2003), En Seguido contends that the term "endeavor" has a broader
meaning only requiring activity directed toward a goal. Because the prior owners and En Seguido
were taking action directed at the goal of development, En Seguido argues that they were engaged
in an endeavor or project for which they were entitled to vested rights.

 We agree with the attorney general's opinion that a permit is for a specific project. Although
En Seguido asserted during oral argument that its rights vested under ordinance 86715 separate and
apart from chapter 245, the trial court found that the 1971 plat was a permit as defined by chapter
245. Furthermore, although En Seguido stressed various sections of the ordinance that refer to
"Permit Rights" for property or to be recognized on property, the term "Permit Rights" is defined
in ordinance 86715 as the right "to complete a project." Thus, the phrases Permit Rights for
property or Permit Rights to be recognized on property as used in ordinance 86715 refer to the right
to complete a project on the property. This is bolstered by Section 35-1027(f) of the Unified
Development Code that provides: "After September 1, 1997, application may be made to the
Director of Planning for recognition of Permit Rights for a particular project by completion of a
form...."

 Because the term project is defined as an endeavor, rights vest in a particular project and are
no longer vested if the project changes. Op. Tex. Att'y Gen. No. JC-0425 (2001). The question then
becomes whether the project En Seguido seeks to pursue is a change from the project envisioned by
the 1971 plat. The record does not contain sufficient evidence to conclusively establish that the
project did not change; therefore, En Seguido did not meet its summary judgment burden. The
difference in the appearance of the plats themselves give rise to a fact issue since the 1971 plat
contains one lot while the more recent subdivision drawing contains 154 lots. Furthermore, the City
introduced evidence that if the same dense residential development was intended in 1971, the
ordinances in effect in 1971 would have required greater detail in the 1971 plat. Accordingly, the
trial court erred in granting summary judgment because genuine issues of material fact existed with
regard to the nature of the project in which En Seguido had vested rights.

B. Was the 1971 plat a required permit giving rise to vested rights?

 The first sentence of section 245.002(b) provides, "If a series of permits is required for a
project," the regulations in effect at the time the original application for the first permit in the series
is filed are the regulations applicable for approval of all other permits required for completion of the
project. Tex. Loc. Gov't Code Ann. § 245.002(b) (Vernon 2005) (emphasis added). Section
245.002(b) further provides, "All permits required for the project are considered to be a single set
of permits." Tex. Loc. Gov't Code Ann. § 245.002(b) (Vernon 2005) (emphasis added). When
the 1971 plat was filed, the applicable statute only required a plat to be filed if a property owner
intended to divide a tract of land "in two or more parts for the purpose of laying out any
subdivision." (1) Act of April 21, 1949, 51st Leg., R.S., ch. 154, §1, 1949 Tex. Gen. Laws 321, 322
(formerly article 974a of the Texas Revised Civil Statutes), repealed by Act of April 30, 1987, 70th
Leg., R.S., ch. 149, §49(1), 1987 Tex. Gen. Laws 707, 1306 (current version at Tex. Loc. Gov't
Code Ann. §212.004 (Vernon 1999)). Under section 245.002(b), therefore, the City argues that En
Seguido did not have vested rights based on the 1971 plat because it was not a required permit. See
2218 Bryan Street, Ltd. v. City of Dallas, 175 S.W.3d 58, 62-64 (Tex. App.--Dallas 2005, pet.
denied) (concluding request for hardship relief was not a required permit); Levy v. City of Plano, No.
05-97-00061-CV, 2001 WL 1382520, at *3-4 (Tex. App.--Dallas Nov. 8, 2001, no pet.) (concluding
land study was not a required permit).

 En Seguido counters, however, that pursuant to section 245.002(a), a regulatory agency must
consider the approval or disapproval of an application for a permit based on the regulations in effect
at the time a plan for development of real property or plat application is filed with a regulatory
agency. Tex. Loc. Gov't Code Ann. § 245.002(a) (Vernon 2005). Because section 245.002(a)
does not refer to a required plan or plat, En Seguido asserts that rights did vest because a plan or plat
was filed with a regulatory agency. We conclude that the language in section 245.002(a) is
consistent with the last sentence in section 245.002(b) that states:

 Preliminary plans and related subdivision plats, site plans, and all other development
permits for land covered by the preliminary plans or subdivision plats are considered
collectively to be one series of permits for a project.


Tex. Loc. Gov't Code Ann. § 245.002(b) (Vernon 2005). Reading the two sections together, the
filing of a plan for development or plat application, including preliminary plans and plats, gives rise
to vested rights regardless of whether the plan or plat was required to be filed.

C. Had the project become dormant?

 Section 245.005 provides that a regulatory agency may enact an ordinance that places an
expiration date on a permit if as of the first anniversary of the effective date of chapter 245 (which
was May 11, 2000): (1) the permit does not have an expiration date; and (2) no progress has been
made towards the completion of the project. Tex. Loc. Gov't Code Ann. § 245.005(a) (Vernon
2005). Progress towards completion of the project is defined to include various actions, including
the payment of utility connection fees or impact fees. Tex. Loc. Gov't Code Ann. § 245.005
(Vernon 2005).

 Assuming, without deciding, that section 35.713 of the City's Unified Development Code
is an ordinance that places an expiration date on En Seguido's permit, the City asserts that the permit
expired because no progress was made towards the completion of the project. (2) The City appears
to be asserting that because section 245.005 lists certain activities that would be considered progress
towards completion, En Seguido and the prior owners were required to undertake one of those
activities to prevent the project from becoming dormant. Section 245.005(c) states, "Progress
towards completion of the project shall include any one of the following...." Tex. Loc. Gov't Code
Ann. § 245.005(c) (Vernon 2005). The Code Construction Act states, "'[i]ncludes' and 'including'
are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does
not create a presumption that components not expressed are excluded." Tex. Gov't Code Ann.
§ 311.005(13) (Vernon 2005). Accordingly, the activities listed in section 245.005 are not the
exclusive activities that can be considered in determining whether progress had been made towards
the completion of the project. 

 The record contains evidence of each of the following activities (3)
:

(1) In 1999, the prior owners sought confirmation that gas and electric supply lines could be
extended to the property which was confirmed by CPS on November 11, 1999.


(2) In 1999, the prior owners sought confirmation that the property was within the service area for
Southwestern Bell, and on November 16, 1999, Southwestern Bell advised that the land was within
its service area.


(3) Sometime prior to June 5, 2000, a preliminary plat was submitted to the San Antonio River
Authority, which acknowledged on June 5, 2000, that SARA would provide wastewater service for
the subdivision.


(4) Sometime prior to May 14, 2000, the prior owners retained the services of a company to file a
development rights permit application.


En Seguido also refers to several actions taken after the May 11, 2000 date to support its contention
that the project had not become dormant. However, section 245.005 only looks to progress made
prior to the May 11, 2000 anniversary date; therefore, activities taken after that date are not relevant
in determining whether a project is dormant.

 Although the record contains evidence of actions taken prior to May 11, 2000, the evidence
does not conclusively establish "progress toward completion" as a matter of law. A matter is
conclusively established if reasonable people could not differ as to the conclusion to be drawn from
the evidence. City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005). In this case, reasonable
people could differ as to whether the actions taken were sufficient to constitute progress towards
completion. Accordingly, a genuine issue of material fact was raised with regard to whether progress
had been made towards completion of the project sufficient to prevent the expiration of En Seguido's
permit if it was subject to an expiration date.

Conclusion


 Because we have concluded that genuine issues of material fact were raised with regard to
the nature of En Seguido's vested rights and whether the project in which rights vested had become
dormant, we do not address the remaining issues raised by the City. (4) See Tex. R. App. P. 47.1
(opinion should address only those issues necessary to final disposition of the appeal).


 Alma L. López, Chief Justice


1. In an alternative argument, En Seguido asserted that the 1971 plat was required to be filed under former
article 974a in order for the property to be connected to public utilities; however, the provision relied upon by En
Seguido actually reads, "Unless and until any such plan, plat or replat shall have been first approved...." Thus, the
section refers to such a plan or plat that article 974a required to have been filed. Since the 1971 plat only contained
one lot, it was not such a plan or plat.
2. We note that the commentary to the division of the UDC addressing vested rights states, "Any project
which obtain [sic] a 'development permit' pursuant to the provisions of Ordinance No. 86715, passed and approved
September 25, 1997, shall continue to fall under the purview of said Ordinance the adoption of this chapter
notwithstanding." 
3. In its motion for summary judgment, En Seguido relied on several of the listed activities and interactions
with the City to assert that the City had recognized its vested rights. Such activities or interactions, however, do not
give rise to vested rights if those rights were not vested pursuant to the applicable statutory provisions.

4. We do note, however, that DRP 459 would only recognize whatever vested rights arise from the 1971 Plat. 
If a fact finder determines that the project changed so that the current development regulations would apply to the
154 lot development, that finding does not alter the fact that DRP 459 properly recognized that rights had vested but
only as to the project initially envisioned by the 1971 Plat.