

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00013-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

**GREATER SAN ANTONIO BUILDERS ASSOCIATION** and Indian Springs Ltd.,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-19727
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
    Marialyn Barnard, Justice
    Rebeca C. Martinez, Justice

Delivered and Filed:  November 20, 2013

AFFIRMED

The City of San Antonio appeals from a declaratory judgment invalidating its fair notice ordinance. We affirm.

### BACKGROUND

*Chapter 245 of the Texas Local Government Code*

In Texas, title 7 of the local government code governs the regulation of land use, structures, businesses, and related activities. Chapter 245, which is contained in title 7 of the local government code, governs the issuance of local permits by a regulatory agency. TEX. LOC. GOV'T CODE ANN.

§§ 245.001-.007 (West 2005). In 2005, the Texas Legislature amended chapter 245 to include a provision stating that certain development rights accrue "on the filing of an original application or plan for development or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought." *See id*. § 245.002(a-1). Thus, under chapter 245, a development project is governed by the regulations in effect at the time of the application for the project's first permit, rather than by any intervening regulations passed by the regulatory agency. *See id*. Chapter 245 expressly provides that it may be enforced through declaratory relief. *Id*. § 245.006(a).

### *Fair Notice Ordinance*

In February 2006, the City of San Antonio passed the fair notice ordinance. Section 35-410 of the ordinance requires permit applicants to complete a form, the fair notice form, with all permit applications. San Antonio, Tex., Unified Development Code, § 35-410 (2006). The express purpose of section 35-410 is "to provide standard procedures for an applicant to accrue rights under Chapter 245 of the Texas Local Government Code." *Id*. The provisions of section 35-410 apply to "any application for a permit by which an applicant desires to accrue rights under Chapter 245 of the Texas Local Government Code." *Id*. § 35-410 (a). "To accrue rights under Chapter 245 of the Texas Local Government Code, an applicant shall submit a complete application for a required permit . . . within 45 days of the submission of the Fair Notice Form." *Id*. § 35-410 (e).

### *Declaratory Judgment Action*

In July 2006, the Greater San Antonio Builders Association (GSABA) and Indian Springs, Ltd., filed the underlying declaratory judgment action, alleging the fair notice ordinance conflicted with chapter 245. GSABA is a non-profit organization whose members include individuals and entities who are concerned with issues affecting the real estate industry in the greater San Antonio area. Many members also own real property in the City. Indian Springs is a Texas limited

partnership that owns real property in the City. The City is a regulatory agency as that term is defined in chapter 245. *See id*. § 245.001(4) (providing that "regulatory agency" "means the governing body of, or a bureau, department, division, board, commission, or other agency of, a political subdivision acting in its capacity of processing, approving, or issuing a permit").

The City filed a plea to the jurisdiction challenging the standing of GSABA and Indian Springs. The trial court denied the City's plea to the jurisdiction, and the City appealed this interlocutory order. We affirmed the order denying the plea to the jurisdiction. *City of San Antonio v. Greater San Antonio Builders Ass'n*, No. 04-12-00745-CV, 2013 WL 2247468, at \*4 (Tex. App.—San Antonio 2013, no pet.).

### *Summary Judgment Motions*

GSABA and Indian Springs presented the merits of their declaratory judgment action in two traditional summary judgment motions. The first summary judgment motion addressed the ordinance as it affected two categories of plaintiffs: (1) those who had vested rights in their property and had such rights before the enactment of the ordinance and whose rights had been previously acknowledged by the City by way of a vested rights permit or similar document, and (2) those who had vested rights in their property before the enactment of the ordinance but whose vested rights had not been previously acknowledged by the City. The second summary judgment motion addressed the ordinance as it affected a third category of plaintiffs: those who owned a project, but had not yet obtained vested rights at the time the fair notice ordinance was enacted. Cumulatively, the summary judgment motions asserted that, in passing the fair notice ordinance, the City substantively impaired or encumbered vested rights that had already accrued under chapter 245, and substantively impaired or encumbered vested rights that would accrue under chapter 245 in the future. The trial court granted both summary judgment motions, and rendered a final judgment in favor of GSABA and Indian Springs. The City appealed.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156-57 (Tex. 2004); *City of San Antonio v. En Seguido, Ltd.*, 227 S.W.3d 237, 240 (Tex. App.—San Antonio 2007, no pet.). When reviewing a summary judgment we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe*, 145 S.W.3d at 156-57; *En Seguido*, 227 S.W.3d at 240. The party moving for a "traditional" summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Joe*, 145 S.W.3d at 156-57; *En Seguido*, 227 S.W.3d at 240; TEX. R. CIV. P. 166a(c).

## DECLARATORY JUDGMENT

On appeal, the City argues the fair notice ordinance, like all ordinances, was entitled to a presumption of validity, and GSABA and Indian Springs failed to satisfy their burden to overcome this presumption in the summary judgment proceedings below. The City further argues there is no conflict between chapter 245 and the fair notice ordinance; to the contrary, the fair notice ordinance is consistent and in harmony with chapter 245. In response to these arguments, GSABA and Indian Springs argue they met their summary judgment burden by conclusively establishing that the fair notice ordinance conflicts with chapter 245.[1]

When reviewing the validity of a city ordinance, we begin with the presumption that the ordinance is valid. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982); *RCI Entm't, Inc. v. City of San Antonio*, 373 S.W.3d 589, 595 (Tex. App.—San Antonio 2012, no pet.).

---

[1]GSABA and Indian Springs also argue the summary judgments should be upheld because the fair notice ordinance is an unconstitutional retroactive law. Arguably, this issue is not properly presented because GSABA and Indian Springs did not specifically make this argument in the first summary judgment motion. And, as to the second summary judgment motion, GSABA and Indian Springs only raised this issue in their brief, which was not filed until after the City filed its response. Nevertheless, we need not reach this argument because we uphold the summary judgments on the ground that the ordinance conflicts with chapter 245.

The party challenging the ordinance bears the burden to establish its invalidity. *RCI Entm't*, 373 S.W.3d at 595. An ordinance that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with a state statute. *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993); *RCI Entm't*, 373 S.W.3d at 595. We will not hold an ordinance and a state statute repugnant to each other if we can reach a reasonable construction leaving both in effect. *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002); *RCI Entm't*, 373 S.W.3d at 595-96. However, if it is not possible to reconcile the ordinance and the state statute, the state statute trumps the ordinance. *See Dallas Merchant's*, 852 S.W.2d at 490-92.

Historically, the right to develop property in Texas was subject to regulatory changes brought by the local regulatory agency. *Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247, 249 (Tex. App.—Austin 2011, pet. denied). However, the Texas legislature modified this rule by enacting chapter 245. *See id*.; TEX. LOC. GOV'T CODE ANN. § 245.002 (a-1). The effect of chapter 245 is to freeze most of the regulatory agency's land-use regulations as they existed at the time the first permit application is filed through completion of the project. *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 245-46 (Tex. App.—San Antonio, 2012, pet. denied); *Harper Park Two*, 359 S.W.3d at 250. The rights to which a permit applicant is entitled under chapter 245 are commonly referred to as "vested rights." Vested rights attach to a project, not to a particular property owner. *Rogers Shavano Ranch*, 383 S.W.3d at 246; *Harper Park Two*, 259 S.W.3d at 250. Thus, vested rights follow any conveyances or transfer of rights related to the project. *Rogers Shavano Ranch*, 383 S.W.3d at 246; *Harper Park Two*, 259 S.W.3d at 250. Chapter 245 defines a "project" as "an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor." TEX. LOC. GOV'T CODE ANN. § 245.001(3). "Because the term project is defined as *an* endeavor, rights

vest in a particular project and are no longer vested if the project changes." *En Seguido*, 227 S.W.3d at 242-43 (emphasis in original).

In enacting chapter 245, the legislature found the statute's requirements were necessary to prevent "administrative and legislative practices that often result[ed] in unnecessary governmental regulatory uncertainty that inhibit[ed] the economic development of the state[,] increased the costs of housing and other forms of land development[,] and often resulted in the repeal of previously approved permits causing decreased property and related values, bankruptcies, and failed projects." *See* Act of May 11, 1999, 76th Leg., R.S., ch. 73, § 1(b), 1999 Tex. Gen. Laws 432; *see also Harper Park Two*, 359 S.W.3d at 250.

In the case before us, the City asserts the fair notice ordinance is necessary for it to carry out its responsibilities under chapter 245. According to the City, the fair notice ordinance ensures it will have enough information about a project to determine whether the project has changed and, therefore, is subject to current development regulations. GSABA and Indian Springs counter that the fair notice ordinance impairs and encumbers important substantive rights. They take the position that the fair notice ordinance allows the City to prevent owners from obtaining or utilizing vested rights that have already been authorized by the legislature.

The summary judgment evidence submitted by GSABA and Indian Springs included the deposition testimony of Roderick J. Sanchez, the City's Director of Development Services. Sanchez testified that his department interprets and enforces the fair notice ordinance. Sanchez acknowledged that what constituted vested rights was defined by state statute, and the definition of vested rights did not vary based on the location of the project. Nevertheless, Sanchez stated there were no circumstances under which the City would recognize vested rights in the absence of a completed fair notice form. If an owner seeking recognition of vested rights did not submit the fair notice form, his application would be deemed incomplete and the City would not begin its

review to determine whether or not the owner had vested rights. Sanchez noted that the information an owner was required to provide under the fair notice ordinance was much more detailed than the information that was required before the passage of the fair notice ordinance. Before the passage of the fair notice ordinance, an owner could identify an endeavor without having all the information required on the City's fair notice form, and the City would issue vested rights permits without all of this information. Sanchez also acknowledged that before the passage of the fair notice ordinance, but after chapter 245 was enacted, the City required only "evidence of a project" to recognize vested rights, and this evidence could have been as simple as a master development plan.

The summary judgment evidence submitted by GSABA and Indian Springs also included the fair notice ordinance and the fair notice form mandated by the ordinance. The fair notice ordinance provides that the City will not recognize vested rights unless and until the owner completes and submits the fair notice form. *See* San Antonio, Tex., Unified Development Code § 35-712(a)(1)-(b)(2) (2006). The fair notice form requires an owner to identify any existing vested rights permit numbers if such permits have already been approved for the proposed project. The form also requires a site plan for most types of development projects. According to the form, this site plan "shall include lot layout, general building footprint with approximate square footage of building(s), and land use."[2] The fair notice form provides that all fields on the form must be completed for the form to be valid.

Under chapter 245, the filing of the first permit, or plan for development, or plat application, in a development project determines the regulations that will be used to govern the remainder of the project. Specifically, section 245.002(a-1) provides: "Rights to which a permit applicant is entitled under this chapter accrue on the filing of an original application or plan for

---

[2]The undisputed summary judgment evidence showed that this information would generally not be available at the early stages of a project when a first permit application would be submitted.

development or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought." TEX. LOC. GOV'T CODE ANN. § 245.002 (a-1). When read in context, it is clear that the term "original application" contemplates an original permit application. Chapter 245 further provides: "If a series of permits is required for a project, the orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the completion of the project." *Id*. § 245.002(b). Thus, chapter 245 expressly defines the documents that cause the accrual of vested rights and the time when this accrual occurs.[3]

Nevertheless, as shown above, the fair notice ordinance creates an additional procedure for obtaining recognition of vested rights under chapter 245. This additional procedure may wholly preclude the recognition of vested rights accruing under chapter 245. In other words, the fair notice ordinance effectively redefines the manner in which vested rights accrue under chapter 245. Under the fair notice ordinance, the City can deny the exercise of vested rights based upon the owner's failure to provide information beyond that which was required to vest rights in the first place. Thus, the fair notice ordinance directly conflicts with chapter 245.

For these reasons, we hold that GSABA and Indian Springs overcame the presumption of validity and conclusively established that the fair notice ordinance conflicts with chapter 245.

---

[3]Chapter 245 defines "permit" as "a license, certificate, approval, registration, consent, permit, contract or other agreement for construction related to, or provision of, *service from a water or wastewater utility owned*, operated, or controlled by a regulatory agency, or other form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought." TEX. LOC. GOV'T CODE ANN. § 245.001(1) (emphasis added). However, the fair notice ordinance omits a utility service agreement as a document that may trigger the accrual of vested rights. According to the fair notice ordinance, there are only four acceptable documents that trigger the accrual of vested rights: a master development plan, a plat application, a plat, or a building permit. San Antonio, Tex., Unified Development Code § 35-712(b)(3) (A)-(D) (2006).

In arguing that the summary judgments were improperly granted, the City criticizes the trial court for not trying to harmonize the ordinance and the statute. However, the City does not explain how the ordinance and the statute could be harmonized. Having examined chapter 245, the ordinance, and the summary judgment evidence, we conclude the ordinance and chapter 245 cannot be harmonized.

The City also faults the trial court for not severing the objectionable provisions from the fair notice ordinance. The City, however, did not present the severance clause argument in its response to the first summary judgment motion. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Thus, because this argument was not presented to the trial court, we may not consider it on appeal as a ground for reversal of the first summary judgment motion.

The City did present the severance clause argument in its response to the second summary judgment motion. There, the City argued that "[i]f the court believes that some of the requirements of the [f]air [n]otice [o]rdinance are so burdensome that vested rights might be prevented from recognition, the [c]ourt should use the severability clause contained in Section 6 of [the] [o]rdinance [] to strike out only the invalid parts and leave the remainder of the [o]rdinance in effect." The severance clause provides:

> Should any Article, Section, Part, Paragraph, Sentence, Phrase, Clause or Word of this ordinance, for any reason be held illegal, inoperative, or invalid, or if any exception to or limitation upon any general provision herein contained be held to be unconstitutional or invalid or ineffective, the remainder shall, nevertheless, stand effective and valid as if it had been enacted and ordained without the portion held to be unconstitutional or invalid or ineffective.

San Antonio, Tex., Ordinance 2006-02-16-0241 (February 16, 2006).

Here, GSABA and Indian Springs challenged the validity of the entire ordinance; they did not challenge the validity of a particular article, section, part, paragraph, sentence, phrase, clause,

or word of the ordinance. Additionally, the trial court concluded the entire ordinance was invalid, not merely part of it. Under these circumstances, we conclude the trial court did not err in failing to apply the severance clause to salvage parts of the ordinance.

Finally, the City claims that section 245.002(f) expressly authorizes its fair notice ordinance.[4] We disagree. Section 245.002(f) does not go so far as to authorize a regulatory agency to wholly redefine the manner in which vested rights accrue under chapter 245. It merely provides that a regulatory agency is not prohibited from requiring compliance with technical application requirements. *See* TEX. LOC. GOV'T CODE ANN. § 245.002(f).

We hold the trial court did not err in granting summary judgment in favor of GSABA and Indian Springs.

## ATTORNEY'S FEES

Next, the City challenges the trial court's attorney's fees award. The trial court awarded GSABA and Indian Springs $115,000.00 in attorney's fees incurred at the trial level, and additional amounts in the event of an appeal. The City stipulated that $115,000.00 was a reasonable and necessary attorney's fee for the work performed at the trial level. On appeal, the City argues the attorney's fees award was neither equitable nor just. The City argues the taxpayers should not be burdened with paying attorney's fees because the City was merely attempting to regulate development in accordance with the law.

---

[4]Section 245.002(f) provides:

> This chapter does not prohibit a regulatory agency from requiring compliance with technical requirements relating to the form and content of an application in effect at the time the application was filed even though the application is filed after the date an applicant accrues rights under Subsection (a-1).

TEX. LOC. GOV'T CODE ANN. § 245.002(f).

We review the award of attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Peacock v. Schroeder*, 846 S.W.2d 905, 912 (Tex. App.—San Antonio 1993, no writ). Attorney's fees awarded under the Declaratory Judgment Act must be "equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). As we concluded earlier in this opinion, the fair notice ordinance conflicts with chapter 245. GSABA and Indian Springs were successful in demonstrating this conflict between the ordinance and the state statute, and in obtaining a declaratory judgment in their favor. *See Peacock*, 846 S.W.2d at 912 (holding the trial court did not clearly abuse its discretion in awarding all of the stipulated attorney's fees to a party who obtained a declaratory judgment in his favor). We hold the trial court did not abuse its discretion in awarding GSABA and Indian Springs attorney's fees.

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

- 11 -