# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00567-CV

### CMST Development, LLC, Appellant

### v.

### City of Austin, Appellee

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-005159, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

CMST Development, LLC, sued the City of Austin pursuant to Texas Local Government Code chapter 245 seeking declaratory and injunctive relief related to CMST's development of a one-acre tract of land located in the City. *See* Tex. Loc. Gov't Code § 245.006 (waiving political subdivision's governmental immunity from suit in regard to action under chapter 245). CMST sought a declaration that its development of the tract was subject only to orders, regulations, ordinances, rules, and requirements in effect on March 10, 1960. After considering CMST's motion for partial summary judgment and the City's motion for summary judgment, the district court concluded that CMST was not entitled to the declaratory and injunctive relief sought and rendered judgment in the City's favor. We will affirm.

## BACKGROUND

On March 10, 1960, H. E. Eubank filed with the City an application for a preliminary plan—an initial step in platting a subdivision—for a subdivision called "Eubank Acres Section Four." Documents in the record indicate the existence of adjacent subdivisions called "Eubank Acres Section 1" and "Eubank Acres Section 2." The preliminary plan contemplated that Eubank Acres Section Four would be composed of 21 lots located on 12.8 acres of land. The Subdivision Committee of the City's Planning Commission approved the preliminary plan on March 28, 1960. The preliminary plan was approved by the full Planning Commission on April 5, 1960. At that time, the Austin City Code of 1954 governed development of Eubank Acres Section Four.

In June 1960, Eubank filed with the City's Planning Commission an application for a final plat for Eubank Acres Section Four. The boundary of the subdivision depicted on the final plat excluded six lots that had been identified in the preliminary plan as Lots 16, 17, 18, 19, 20, and 21. Thus, the final plat for Eubank Acres Section Four contemplated that it would be composed of Lots 1 through 15, and the remaining land initially identified as part of Eubank Acres Section Four was not included in the final plat. The final plat filed was called "Eubank Acres Section Four," not "Eubank Acres Section Four, Lots 1 through 15" or "Eubank Acres Section Four Phase One." The final plat did not include anything else to indicate that it was not the final plat for the entirety of the Eubank Acres Section Four subdivision. This final plat was accepted and authorized for record by the City's Planning Commission on October 13, 1960, and was filed for record with the Travis County clerk. *See* Tex. Loc. Gov't Code § 212.004 (plat must be filed and recorded with county clerk of county in which land is located).

2

Eubank Acres Section Four, consisting of Lots 1 through 15, was developed with residences and a road that provided access to those residences. The 4.12-acre tract of land that was originally identified as Lots 16 through 21 in the preliminary plan (the "Elton Tract") but excluded from the final plat, was ultimately conveyed to Richard L. Elton and Nancy H. Elton in August 1973. The warranty deed conveying the Elton Tract to the Eltons includes a metes and bounds description of the tract that references its location in relation to lots that are part of Eubank Acres Section Four; specifically Lot 13, Lot 15, and Lot 1, each of which is adjacent to the Elton Tract. In November 2017, the Eltons conveyed the Elton Tract to CMST. In March 2018, CMST conveyed 1.7581 acres out of the Elton Tract to Brannon and Linda Taylor. The warranty deed conveying this portion of the Elton Tract includes a metes and bounds description that references its location in relation to a lot that is part of Eubank Acres Section Four; specifically the adjacent Lot 15. The metes and bounds description also references the 1.7581-acre tract's location relative to lots in Eubank Acres Section 1. CMST conveyed an additional 1.326 acres out of the Elton Tract to Thomas Nilles and Jennifer Bristol and the warranty deed conveying this portion of the Elton Tract also includes a metes and bounds description that references its location in relation to Lot 15 of Eubanks Acres Section Four and to a lot in Eubank Acres Section 2. After making these conveyances, CMST owned the remainder of the Elton Tract, consisting of a 1.0359-acre tract (the "CMST Property").

In February 2018, CMST submitted a "Revised Preliminary Plan" for a development it called "Eubanks Acres Section Four Lots 16-21" on the Elton Tract. At the time CMST submitted the plan, it still owned the entire Elton Tract but one month later it had conveyed away all but the 1.0359-acre CMST Property. CMST also submitted a vested-rights petition seeking a determination by the City that the development of the Elton Tract would be

3

governed by the regulations and ordinances in effect in March 1960. *See* Tex. Loc. Gov't Code §§ 245.001-.007; *Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247, 248 (Tex. App.—Austin 2011, pet. denied) ("Under chapter 245 of the local government code, once an application for the first permit required to complete a property-development 'project' is filed with the municipality or other agency that regulates such use of the property, the agency's regulations applicable to the 'project' are effectively 'frozen' in their then-current state and the agency is prohibited from enforcing subsequent regulatory changes to further restrict the property's use.").

CMST asserted that development of the Elton Tract is part of the original Eubank Acres Section Four project such that vested rights should attach under chapter 245 and that the regulations and ordinances that were in effect in 1960, when Eubank Acres Section Four was approved by the City's Planning Commission, should apply to its development of the Elton Tract nearly sixty years later. The City denied CMST's application for vested rights and determined that development of the Elton Tract must be done in compliance with the ordinances and regulations in effect in February 2018, when CMST submitted its plan for development of the Elton Tract. The City reasoned that after the preliminary plan for Eubank Acres Section Four was approved by the Planning Commission in 1960, Eubank submitted and received acceptance of a plat for Lots 1 through 15 but never submitted a plat that included Lots 16 through 21. The City maintained that no plat for Lots 16 through 21 satisfied "the applicable deadlines in effect at that time under [the City Code] for the entirety of the preliminary plan application." The City also determined that "[t]he subsequent plat for this area known as Eubanks [sic] Acres, Sec 4, approved on Oct. 13, 1960,[1] does not include the lots for which Chapter 245 rights are now

---

[1] This is a reference to the final plat that Eubank submitted that platted Lots 1 through 15 and that was filed for record with the Travis County clerk.

4

claimed, nor was a separate plat for these lots ever filed in connection with the 'preliminary' within six months as required under [the City Code.]"

CMST then sued the City seeking a declaration that chapter 245 of the Local Government Code entitles it to have its development of the Elton Tract "be approved on the basis of the orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect on March 10, 1960." *See* Tex. Loc. Gov't Code § 245.006 (providing that chapter 245 may be enforced through declaratory or injunctive relief and political subdivision's immunity from suit is waived for action under chapter 245). CMST argued that even though no plat was filed by Eubank for Lots 16 through 21, CMST had filed a plat that platted "Eubank Acres Section Four Lots 16 through 21" and was therefore entitled to develop the CMST Property under the rules in effect in 1960. CMST asserted, in essence, that development of the Elton Tract was a continuation of the Eubank Acres Section Four subdivision project. The City filed a motion for summary judgment asserting that, as a matter of law, the CMST Property did not qualify for chapter 245 vested rights and its development must be governed by the current regulations, ordinances, and rules rather than those in effect in 1960. The district court concluded that CMST was not entitled to vested rights under Local Government Code chapter 245, granted the City's motion for summary judgment, and rendered judgment in the City's favor. CMST then perfected this appeal.

## DISCUSSION

In its first issue on appeal, CMST asserts that the district court erred in granting the City's motion for summary judgment because, as a matter of law, it has the vested right under Local Government Code chapter 245 to develop the CMST Property under the rules in

effect in 1960 because the "project" was initiated by Eubank's filing of a preliminary plan in 1960, the project was "in progress" in September 1997, and substantial progress was made toward completion of the project. In issues two, three, and four, CMST argues that, as a matter of law, no permit related to the CMST Property had expired, the permit application at issue was a "required" permit so as to come within the scope of chapter 245, and any expiration of the permit must be governed by the dormancy provision of chapter 245. In its fourth issue, CMST maintains that expert testimony submitted by the City should have been excluded either because it was irrelevant or because the subject of the expert testimony was not timely disclosed.

As a general rule, "the right to develop property is subject to intervening regulations or regulatory changes." *Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1999) (op. on reh'g). However, "the Texas Legislature [has] significantly altered this rule by requiring that each permit in a series required for a development project be subject only to the regulations in effect at the time of the application for the project's first permit, and not to any intervening regulations." *Id.* Chapter 245 of the Texas Local Government Code provides:

> (a) Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for permit solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time:
>
> > (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or
> >
> > (2) a plan for development of real property or plat application is filed with a regulatory agency.
>
> . . . .
>
> (b) If a series of permits is required for a project, the orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the

completion of the project. All permits required for the project are considered to be a single series of permits. Preliminary plans and related subdivision plats, site plans, and all other development permits for land covered by the preliminary plans or subdivision plats are considered collectively to be one series of permits for a project.

Tex. Loc. Gov't Code § 245.002 (a), (b). "The effect of these requirements is to 'freeze' most of the regulatory authority's land-use regulations as they existed at the time the first permit application is filed through completion of the 'project.'" *Harper Park Two*, 359 S.W.3d at 250. The statute defines "project" as "an endeavor" that a regulatory agency requires one or more permits to initiate, continue, or complete. Tex. Loc. Gov't Code § 245.001(3). These vested rights protections attach to the "project"—i.e., the regulated endeavor—and not to a particular property owner or permit holder. *Harper Park Two*, 359 S.W.3d at 250. However, the vested-rights protections are lost or forfeited "to the extent that the development being pursued constitutes a new or different 'project' from the one for which the initial permit was sought." *Id.* at 249 (citing *City of San Antonio v. En Seguido, Ltd.*, 227 S.W.3d 237, 242, 43 (Tex. App.—San Antonio 2007, no pet.).

"The obvious intent of chapter 245 is to prohibit land-use regulators from changing the rules governing development projects 'in the middle of the game,' thereby insulating already-underway development and related investment from the vicissitudes and uncertainties of regulatory decision making and all that may influence it." *Id.* at 250. This Court noted that the legislative record reflects that chapter 245's proponents advocated it as an appropriate response to instances when the City of Austin had purportedly imposed new regulatory restrictions retroactively on development projects that were already underway, causing project failures, bankruptcies, and regulatory uncertainty for developers and landowners.

7

*Id.* at 251 (citing House Research Organization, Bill Analysis, Tex. H.B. 1704, 3-4, 76th Leg., R.S. (1999)). The effect of chapter 245 "is to 'freeze' most of the regulatory authority's land-use regulations as they existed at the time the first permit application is filed through completion of the 'project.'" *Harper Park Two*, 359 S.W.3d at 250.

For CMST to prevail on its suit for declaratory relief, it must have established that it was entitled to the vested rights it sought. For vested rights to attach to the development of the CMST Property, development of that property must have been part of the "project" begun in 1960 by Eubank. *See* Tex. Loc. Gov't Code § 245.002; *Harper Park Two*, 359 S.W.3d at 250 (effect of section 245.002 is to freeze most land-use regulations as they existed when first permit application in series of permit applications is filed through completion of "project"); *Shumaker Enters., Inc. v. City of Austin*, 325 S.W.3d 812, 814 (Tex. App.—Austin 2010, no pet.) (section 245.002 ensures that, "if after receiving a development application or plan, a regulatory agency changes its land-use regulations, the agency cannot enforce such regulatory change to the detriment of the applicant"). Because the summary-judgment evidence establishes that the CMST Property was not part of the 1960 Eubank Acres Section Four "project," the trial court did not err by granting the City's motion for summary judgment.

The district court's summary-judgment ruling that CMST was not entitled to vested-rights protections turns on the application of Local Government Code chapter 245 to undisputed material facts. Because the vested rights provided for in chapter 245 attach to the "project" and not to a particular property owner or permit holder, the starting point for a vested-rights determination is to identify the relevant "project" to which the vested rights attach. As already noted, the statute defines "project" as "an endeavor" that a regulatory agency requires one or more permits to initiate, continue, or complete. Tex. Loc. Gov't Code § 245.001(3).

8

Thus, we must determine the scope of the "endeavor" at issue in a particular case as that, in turn, defines the "project." The summary-judgment evidence establishes that the "endeavor" Eubank commenced in 1960 was the development of the Eubank Acres Section Four subdivision. The dispositive issue, then, is whether the land comprising the Elton Tract is part of the Eubank Acres Section Four subdivision. We conclude that it is not.

The evidence is that H. E. Eubank submitted a preliminary plan for development of a subdivision to be called Eubank Acres Section Four. The preliminary plan contemplated that the subdivision would be composed of 21 lots, including the land constituting the Elton Tract. However, the final plat that was filed excluded the Elton Tract from the boundaries of the subdivision and platted only Lots 1 through 15. Notably, the plat is identified as the *final* plat for the subdivision. The plat does not indicate that it is addressing only the first phase of development of Eubank Acres Section Four. Rather, it was filed of record as the final plat for Eubank Acres Section Four. The summary-judgment evidence establishes that the entire "endeavor" Eubank ultimately undertook was a 15-lot subdivision that did not include the Elton Tract. The summary-judgment evidence contains nothing to indicate that the final plat filed for record in 1960 was the first of a series of plats for the property identified in the preliminary plan or that the subdivision was to be platted in phases. The evidence shows that Eubank excluded the previously identified Lots 16 through 21—the Elton Tract—from the final plan of development for Eubank Acres Section Four. The final plat submitted and filed for record defines both the scope of the endeavor and the "project" to which vested rights attach. This "project" does not include the Elton Tract.

CMST maintains that the "project" in this case should be defined by the preliminary plan, which did include the Elton Tract. But CMST ignores that, ultimately, the

9

final plat for Eubank Acres Section Four was more limited in scope than the preliminary plan and gave no indication that it was the final plat for a "phase" of the project or a portion of the project rather than for the entirety of the project. CMST submitted no summary-judgment evidence tending to show that the Elton Tract was an unfinished part of Eubank Acres Section Four to counter evidence that the plat filed of record excluded the Elton Tract from the scope of the project at the final platting phase. Moreover, the summary-judgment evidence showed that the land was ultimately sold as a single tract described by a metes and bounds description with no reference to its inclusion in any particular subdivision. CMST identifies no case law to support the proposition that property included in a preliminary plan of development continues to enjoy vested rights protection even after it has been excluded from the scope of the project.

Moreover, even were we to conclude that the preliminary plan permanently defined the scope of the project and that the Elton Tract remained part of the project despite its exclusion from the final plat, vested rights protection would still not attach to the Elton Tract. The summary-judgment evidence shows that the project CMST is pursuing is a "new or different" project from the one presented to the City in Eubank's preliminary plan. The preliminary plan contemplated that the Elton Tract would be developed as six individual residential lots in Eubank Acres Section Four. Those six lots were not platted and developed as contemplated in the preliminary plan. Instead, the land was sold as a metes and bounds tract to the Eltons.[2] The Eltons then sold the tract to CMST, which then conveyed two portions of the tract to third parties.

---

[2] As previously noted, the metes and bounds descriptions reference the Elton Tract's location relative to lots in Eubank Acres Section Four but do not purport to describe the Elton Tract as *part* of Eubank Acres Section Four.

Based on the application of chapter 245 to the undisputed material facts, the district court correctly concluded that the Elton Tract was not within the "project" that was initiated by Eubank in 1960. Consequently, the City was not required by chapter 245 to apply the same "orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements" in effect in March 1960. The district court properly concluded that CMST was not entitled to the declaratory and injunctive relief sought and did not err by granting the City's summary-judgment motion.

On appeal, CMST also asserts that the district court erred by not excluding the declaration of the City of Austin's Environmental Officer, Chris Herrington, which the City submitted in support of its cross-motion for summary judgment. CMST maintains that the testimony was irrelevant to the issue of whether vested rights attached to the CMST Property and that the testimony constituted undisclosed, and therefore inadmissible, expert testimony. Herrington's declaration addressed aspects of the City's existing Land Development Code and Environmental Criteria Manual and included his statements regarding the likelihood of erosion and flooding resulting from development of the CMST Property unless it was done using the "protective works" currently required by the City. Because we agree that this testimony was not relevant to the issue of the scope of the "project" to which vested rights attached, the district court's refusal to exclude the Herrington declaration from the summary-judgment evidence did not constitute reversible error.

## CONCLUSION

Because the CMST Property was not part of the Eubank Acres Section Four development "project," the vested rights protections of chapter 245 do not apply to its development. We therefore affirm the district court's judgment in the City's favor.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed: February 16, 2022