

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-12-00171-CV

THE TOWN OF ANNETTA SOUTH,        APPELLANTS/APPELLEES
TEXAS; GERHARD
KLEINSCHMIDT; JAMES
ABLOWICH; PHILLIP KUNTZ; AND
DAVID GOOLSBY

V.

SEADRIFT DEVELOPMENT, L.P.        APPELLEE/APPELLANT

----------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
TRIAL COURT NO. CV11-0220

----------

## OPINION[1]

----------

[1]The undersigned became author of this majority opinion on August 12, 2014.

# I. INTRODUCTION

The primary issue in this appeal is whether Appellant The Town of Annetta South's Ordinance 011—which requires that all lots within the Town's extraterritorial jurisdiction (ETJ) must be at least two acres in size—violates Texas Local Government Code section 212.003(a)(4). *See* Tex. Loc. Gov't Code Ann. § 212.003(a) (West 2008); Annetta South, Tex., Ordinance 011 (Sept. 12, 1985). The trial court found that it did and granted a partial summary judgment for Appellee Seadrift Development, L.P. specifically on this ground. For the reasons set forth below, we will affirm the trial court's partial summary judgment for Seadrift.

# II. PROCEDURAL AND FACTUAL BACKGROUND

Seadrift brought a declaratory judgment action and a request for mandamus relief against the Town after the Town denied Seadrift's preliminary subdivision plat for an approximately 106-acre tract. A large portion of Seadrift's platted subdivision was located in the ninety-five acres of the Town's ETJ. While Seadrift's proposed subdivision lots within the Town's boundaries were two acres in size, the lots in the Town's ETJ were not.

At the time of Seadrift's plat application, the only Town ordinance provisions addressing density in the Town's ETJ were located in Town Ordinance 011. Ordinance 011 contains a provision requiring that all lots in the Town's ETJ be at least two acres in size. After the Town denied Seadrift's subdivision plat, Seadrift requested that the Town certify the reasons for the Town's denial. *See*

2

Tex. Loc. Gov't Code Ann. § 212.009(e) (West 2008) (providing that a municipal authority responsible for approving plats shall certify the reasons for the action taken on a plat application upon request of the land owner). The Town responded, certifying that the reason for its denial of Seadrift's plat was that "the density of this development is excessive." After receiving this certification, Seadrift filed suit against the Town seeking a declaratory judgment that Ordinance 011's provision requiring that all lots within the Town's ETJ must be at least two acres in size violates Texas Local Government Code section 212.003(a)(4). *See id.* § 212.003(a)(4). Seadrift also sought a writ of mandamus to compel the Town to engage in the ministerial act of approving the subdivision plat.

The parties filed competing motions for summary judgment on the issue of whether the provision in the Town's Ordinance 011 that required all lots in the Town's ETJ to be at least two acres in size violated Texas Local Government Code section 212.003(a)(4). *See id.* The trial court granted Seadrift's motion for partial summary judgment on its declaratory judgment claim but denied all other relief, including Seadrift's request for a mandamus, and denied the Town's motion for summary judgment. The Town perfected this appeal, raising three issues.

Seadrift filed a cross-appeal in this court, asserting that not only should we affirm the trial court's partial summary judgment for Seadrift on its declaratory judgment claim but also that we should reverse and render judgment for Seadrift

3

on its request for mandamus relief because the Town possessed a ministerial duty to approve Seadrift's preliminary plat.

## III. STANDARDS OF REVIEW

### A. Statutory Construction

Courts use the same rules to construe statutes and to construe municipal ordinances. *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). Thus, our objective in construing the Town's Ordinance 011 is to discern the Town's intent, and our objective in construing local government code section 212.003(a) is to discern the legislature's intent. *See id.* (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)). In making this determination, we look first to the plain meaning of the words of the provisions, using any definitions provided*. Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012). In giving effect to the statute or ordinance as a whole, we should not assign a meaning to a provision that would be inconsistent with other provisions of the statute or ordinance. *See Wende*, 92 S.W.3d at 430.

Statutes and ordinances in derogation of the common law are strictly construed. *Tex. Co. v. Grant*, 182 S.W.2d 996, 1000 (Tex. 1944); *accord* 3 Sutherland Statutes and Statutory Construction § 61:1 (7th ed.) ("Statutes in derogation of a property owner's right at common law to build what she pleases upon her own property must be strictly construed in favor of the owner."). Because a municipality possesses authority to regulate land development in its

4

ETJ only to the extent it is legislatively granted that authority, legislatively-created express limitations to that grant of authority—such as local government code section 212.003—are construed strictly against the authority of the municipality and in favor of the land owner. *See* Tex. Loc. Gov't Code Ann. § 212.003; 3 Sutherland Statutes and Statutory Construction § 64:1 (7th ed.) ("The legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers permits.").

When reviewing the validity of a city ordinance, we begin with the presumption that the ordinance is valid. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex.), *cert. denied*, 459 U.S. 1087 (1982); *RCI Entm't, Inc. v. City of San Antonio*, 373 S.W.3d 589, 595 (Tex. App.—San Antonio 2012, no pet.). The party challenging the ordinance bears the burden to establish its invalidity. *RCI Entm't*, 373 S.W.3d at 595. An ordinance that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with a state statute. *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993).

### B. Summary Judgment

We review a trial court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex. 2004); *City of San Antonio v. En Seguido, Ltd.*, 227 S.W.3d 237, 240 (Tex. App.—San Antonio 2007, no pet.). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any

5

doubts in the nonmovant's favor. *Joe*, 145 S.W.3d at 156–57; *En Seguido*, 227 S.W.3d at 240. The party moving for a "traditional" summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Joe*, 145 S.W.3d at 156–57; *En Seguido*, 227 S.W.3d at 240; Tex. R. Civ. P. 166a(c).

## IV. THE TOWN'S FIRST ISSUE: DOES ORDINANCE 011 VIOLATE LOCAL GOVERNMENT CODE SECTION 212.003?

In its first issue, the Town contends that Ordinance 011's two-acre-minimum-lot-size subdivision rule is not equivalent to a restriction on the number of residential units that can be built per acre as prohibited by Texas Local Government Code section 212.003(a)(4). Accordingly, the Town argues that the trial court erred by granting partial summary judgment for Seadrift on this basis.

### A. The Town's Powers to Regulate in Its Extraterritorial Jurisdiction

A city's authority to regulate land development in its ETJ is wholly derived from a legislative grant of authority. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 902 (Tex. 2000); *accord Ex parte Ernest*, 136 S.W.2d 595, 597 (Tex. Crim. App. 1939) ("As a general rule a municipal corporation's powers cease at municipal boundaries and cannot, without plain manifestation of legislative intention, be exercised beyond its limits."). If no municipal ordinances are legislatively authorized to be extended to a municipality's ETJ, then only county land-use regulations apply. *FM Props. Operating Co.*, 22 S.W.3d at 876, 902. A city is authorized to apply municipal ordinances "governing plats and

6

subdivisions of land . . . to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality" to property within its ETJ. *See* Tex. Loc. Gov't Code Ann. §§ 212.002, .003 (West 2008). The municipality is also authorized to apply in its ETJ other city ordinances relating to access to public roads or the pumping, extraction, and use of groundwater by persons other than retail public utilities. *Id.* § 212.003(a). But, unless otherwise authorized by state law, a municipality "shall not regulate" the following within the municipality's ETJ:

(1) the use of any building or property for business, industrial, residential, or other purposes;

(2) the bulk, height, or number of buildings constructed on a particular tract of land;

(3) the size of a building that can be constructed on a particular tract of land;

(4) the number of residential units that can be built per acre of land; or

(5) the size, type, or method of construction of a water or wastewater facility that can be constructed to serve a developed tract of land if [certain other facts apply].

*Id.* § 212.003(a)(1)–(5). The purpose of these restrictions on a municipality's authority to impose regulations on land in the municipality's ETJ is to prohibit the municipality's extension of zoning ordinances into its ETJ under the guise of cleverly drafted rules "governing plats and subdivision of land." *See id.*

7

§ 212.002; *Quick v. City of Austin*, 7 S.W.3d 109, 121 (Tex. 1998) (noting section

212.003 prohibits the application of zoning regulations in ETJ areas).[2]

### B. Statutory Construction Analysis Establishes That Ordinance 011 Violates Texas Local Government Code Section 212.003(a)(4)

In its first issue, the Town argues:

> A minimum lot size only regulates how small a resulting lot can be. It does not expressly mandate the number of residential units that can be built on the resulting lots and thus, does not regulate how many residential units can be placed on an acre of land. A resulting two-acre lot can logically be the site for one or multiple duplexes, triplexes or apartment buildings and thus, can contain one, twenty, or more residential units. The same is true of a 0.2-acre lot. The restriction in the Annetta South's ordinance is on the size of lots, not number of residences per acre.
>
> . . . .
>
> . . . In this case, lot size could have some impact [on] the resulting number of residential units per acre, but that is not the specific characteristic that the law proscribes.

### 1. Ordinance 011

Turning to the language of the ordinance at issue, Ordinance 011 defines a

"lot" as

---

[2]The Town cites the legislative history of section 212.003, compares section 212.003 to the zoning powers granted in chapter 211 of the local government code, and argues that the section 212.003 language relied upon by Seadrift to challenge Ordinance 011's lot-size restriction was only intended to prevent zoning regulations from being applied in the ETJ. But in construing a statute, we look to the plain meaning of the words chosen by the legislature and do not consider extrinsic aids unless the statute is ambiguous. *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). As set forth below, giving the words of section 212.003(a)(4) their plain meaning, the statute is not ambiguous; thus, we do not consider extrinsic aids.

[a]n undivided tract or parcel of land, *no less than two (2) acres*, having frontage on a public street and *which is, or in the future may be offered for sale, conveyance, transfer or improvement*; which is designated as a distinct and separate tract, and which is identified by a tract or lot number or symbol in a duly approved subdivision plat which has been properly filed.

Annetta South, Tex., Ordinance 011 (emphasis added). Based on the plain meaning of the above language of Ordinance 011, it is undisputed that it mandates that lots within the Town's ETJ must be at least two acres in size.

We are required to give the words used in Ordinance 011 their defined meaning, if one exists. *See, e.g., Tex. Mut. Ins. Co.*, 381 S.W.3d at 452. "Subdivision" is defined in Ordinance 011 as "[t]he division of any tract of land [situated within the Town or its ETJ] into two or more parts for the purpose of . . . laying out suburban lots or building lots, or any lots . . . intended for public use or the use of purchasers." Annetta South, Tex., Ordinance 011. Thus, if the owner of a two-acre lot in the Town's ETJ wants to divide his lot into two or more parts to sell a part of it, the lot is a tract of land located in the Town's ETJ that meets the ordinance's definition of "subdivision" because the division of the tract of land is for the purpose of laying out lots offered for sale and is intended for the use of purchasers. Approval of any re-subdivision of a two-acre lot, however, would not be granted due to Ordinance 011's two-acre minimum lot size.[3] Therefore,

---

[3]The Town's summary judgment response asserts that Seadrift "seems to want the court to ignore the fact that the [Town] has adopted a new ordinance which is [in] evidence and which would be available to such resubdividers which does <u>not</u> require two[-]acre minimums." But the new ordinance referenced by the Town does continue to require two-acre lots; it simply provides that variances

9

applying the definitions of "lot" and "subdivision" that are provided in Ordinance 011, it is undisputed that Ordinance 011 prohibits the owner of a two-acre lot in the Town's ETJ from dividing the two-acre lot into a less than two-acre parcel of land and selling it. *Accord City of Weslaco v. Carpenter*, 694 S.W.2d 601, 602–04 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (construing this same definition of "subdivision" as used in City of Weslaco's ordinance addressing minimum standards—other than lot size—and licensing requirements for mobile home and/or recreational vehicle parks in city's ETJ). Through this circuitous definitional loop created by Ordinance 011—definitions that we are required to apply in construing the ordinance—although multiple duplexes, triplexes, and apartment complexes may technically be built on a single two-acre lot in the Town's ETJ, they can never be individually sold. The result is that the entirety of each two-acre lot is required to share common ownership; under Ordinance 011, parcels of land on which duplexes, triplexes, or apartment complexes are built within a two-acre lot are incapable of ownership different than the ownership of the entire two-acre lot.

## 2. Section 212.003(a)(4)

The next issue is whether the regulation imposed in the Town's ETJ by the circuitous definitional loop contained in Ordinance 011 violates section

---

may be sought—but not necessarily granted—from such minimums. And the existence of a new ordinance does not alter an analysis of whether Ordinance 011 violates local government code section 212.003(a)(4).

10

212.003(a)(4).  *See* Tex. Loc. Gov't Code Ann. § 212.003(a)(4) ("[I]n its extraterritorial jurisdiction a municipality shall not regulate . . . (4) the number of residential units that can be built per acre of land.").  Again, we must give the language of section 212.003 its plain meaning; we discern the intent of the legislature by the plain meaning of the words it chose to use.  *See Tex. Mut. Ins. Co.*, 381 S.W.3d at 452.  In section 212.003(a)(4), the legislature chose to use the mandatory words "shall not regulate," expressly limiting the grant of authority given to municipalities to extend rules governing plats and subdivisions into its ETJ.  The plain meaning of "shall not" imposes a prohibition.  *See* Tex. Gov't Code Ann. § 311.016(5) (West 2013); *accord Fuentes v. Howard*, 423 S.W.2d 420, 423 (Tex. Civ. App.—El Paso 1967, writ dism'd) (construing "shall not" in a statute as mandatory, however innocent the violation of the statute).  And although "regulate" is not defined in the statute, its most common dictionary meaning is "to control or supervise by means of rules and regulations."  *See* Oxford Dictionaries, *available at* http://www.oxforddictionaries.com/us/definition/american_english/regulate?q=regulate; *see also* Webster's Third New International Dictionary 1913 (2002) (defining "regulate" as "to govern or direct according to rule").  Thus, giving section 212.003(a)(4) its plain meaning, the legislature intended to impose a mandatory duty on municipalities to refrain from controlling or directing in a municipality's ETJ—whether explicitly or implicitly—the number of residential units built per acre.

11

### 3. Ordinance 011 Violates Section 212.003(a)(4)

The Town essentially concedes that Ordinance 011's two-acre lot size requirement could have some impact on the resulting number of residential units per acre. But the Town claims that the number of residential units that can be built per acre is not the specific characteristic that Ordinance 011 proscribes. Contrary to the plain meaning of "regulate" as used in section 212.003(a)(4), the Town gives an overly narrow meaning to the word, equating "regulate" with "specifically proscribing." Using the ordinary meaning of the term "regulate," it is clear that Ordinance 011 does control or "regulate" the number of residential units that can be built per acre on land within the Town's ETJ. *See* Tex. Att'y Gen. Op. No. GA-0648 (2008) ("The Bulverde Ordinance provisions repeatedly refer to density and also establish residential lot size limits. . . . Thus, the ordinance provisions appear on their face to be inconsistent with Local Government Code section 212.003(a)(1)-(4).").[4]

Moreover, the summary-judgment evidence establishes that, by extending Ordinance 011 into its ETJ, the Town in fact intended to regulate the number of residential units built per acre in its ETJ. As Seadrift points out, there are 43,560

---

[4]The Town's reliance on *Quick* as justification for Ordinance 011 is misplaced. *See* 7 S.W.3d at 121. *Quick* dealt with an ordinance involving water control measures; section 212.003 expressly authorizes a municipality to extend such ordinances to its ETJ. *See id.*; *see also* Tex. Loc. Gov't Code Ann. § 212.003(a).

square feet in an acre, and while the Town denied Seadrift's preliminary plat that would have provided for one home on each of eight 11,000-square-foot lots, the Town claims that Seadrift's preliminary plat would have complied with Ordinance 011 if only Seadrift would have platted eight homes on an 88,000-square-foot (a little more than two acres) lot. Seadrift points out that both scenarios would impose the same infrastructure and utility needs; eight homes on an 88,000-square-foot lot (supposedly not prohibited by Ordinance 011) require the exact same water, sewer, electricity, and gas infrastructure as eight homes all built on eight 11,000-square-foot lots (prohibited by Ordinance 011). Thus, Seadrift contends that Ordinance 011 is and was intended to be exactly the type of regulation prohibited by section 212.003(a)(4)—an implicit extension of the Town's zoning-density ordinances into its ETJ under the guise of cleverly drafted rules governing plats and subdivision of land. *See* Tex. Loc. Gov't Code Ann. § 212.002; *Quick*, 7 S.W.3d at 121 (noting that section 212.003 prohibits the application of zoning regulations in ETJ areas); *accord S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 679 (Tex. 2013) (holding city ordinance invalid because it conflicted with statutory provision).

Finally, if any question remains that Ordinance 011 violates section 212.003(a)(4), we are required to construe section 212.003(a)(4) against the authority of the Town to regulate within its ETJ both because section 212.003 is an express limitation on the authority granted to municipalities to regulate within

13

ETJs and because any regulation of land use[5] is in derogation of the common law. *See Thomas v. Zoning Bd. of Adjustment*, 241 S.W.2d 955, 957 (Tex. Civ. App.—Eastland 1951, no writ); *accord Bryan v. Darlington*, 207 S.W.2d 681, 683 (Tex. Civ. App.—San Antonio 1947, writ ref'd n.r.e.) ("All restrictions of the free use of land are in derogation of the common law right to use land for all lawful purposes that go with the title and possession, and are to be construed strictly against the person creating or attempting to enforce such restrictions."); 3 Sutherland Statutes and Statutory Construction § 64:1 (7th ed.) ("The legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers permits.").

Because Ordinance 011 violates section 212.003(a)(4), we overrule the Town's first issue.

### V. THE TOWN'S SECOND ISSUE: DOES THE SUMMARY-JUDGMENT EVIDENCE ESTABLISH THAT SEADRIFT'S PRELIMINARY PLAT WAS DENIED BASED ON A VIOLATION OF ORDINANCE 011'S TWO-ACRE LOT-SIZE REQUIREMENT

---

[5]The Town claims that Ordinance 011's two-acre restriction is not a regulation of land use but only a regulation of lot size. This is a distinction without a difference under the present facts. Seadrift wants to use its land located in the Town's ETJ by dividing it into less than two-acre tracts and by building one single family residential unit on each lot; the Town relies on Ordinance 011's two-acre lot-size requirement to prohibit this use. *Accord Ferris v. City of Austin*, 150 S.W.3d 514, 516 (Tex. App.—Austin 2004, no pet.) (recognizing ordinance's lot-size restriction was effectively a land-use restriction because, although single-family residential unit could have been built on tract, tract could not be subdivided into lots large enough to meet ordinance's condominium lot-size restriction, and owner wanted to build condominiums).

14

In its second issue, the Town argues that "there was no evidence or conflicting evidence" that the reason for the Town's denial of Seadrift's preliminary plat was because of the less than two-acre lot size of lots within Town's ETJ. The Town does not contend that it conclusively established any specific alternative reason for its denial of Seadrift's preliminary plat; the Town merely argues that Seadrift failed to conclusively establish the two-acre lot-size subdivision rule was the reason.

In support of its motion for partial summary judgment, Seadrift attached summary-judgment evidence that the Town voted to deny Seadrift's preliminary plat on November 18, 2010. When Seadrift requested, per Texas Local Government Code section 212.009(e), that the Town certify the basis for its denial, the Town's Mayor dictated a letter to Seadrift identifying the density of Seadrift's proposed development as the sole basis for the denial of Seadrift's preliminary plat. *See* Tex. Loc. Gov't Code Ann. § 212.009(e). Several of the Town's city council members also testified to this fact in their depositions. And an October 29, 2010 letter from the Town's engineer to Seadrift's engineer indicated that the only way in which Seadrift's preliminary plat did not comply with Ordinance 011 was the plat's lot size.

Thus, although the Town urges on appeal that Seadrift's plat failed to conform with other requirements necessary for its approval—and this may or may not be true—viewing the summary-judgment evidence in the light most favorable to the Town, it conclusively establishes that the Town's sole *reason* for

15

the denial of Seadrift's preliminary plat was "density"; that is, a violation of Ordinance 011's two-acre lot-size restriction. The Town did not offer controverting summary-judgment evidence in the trial court establishing that it denied Seadrift's preliminary plat for any other reason.

We overrule the Town's second issue.

### VI. THE TOWN'S THIRD ISSUE: ATTORNEY'S FEES; SEADRIFT'S CROSS-APPEAL ISSUE: MANDAMUS RELIEF

In its third issue, the Town complains that the trial court erred by awarding Seadrift attorney's fees because, according to the Town, Seadrift impermissibly utilized the Declaratory Judgments Act solely as a vehicle to obtain attorney's fees.[6] According to the Town, Seadrift was required to prove that Ordinance 011's lot-size restriction was unenforceable in order to obtain the mandamus relief Seadrift sought so that Seadrift's declaratory judgment action was unnecessary and served no purpose other than being a mechanism for attorney's fees. That is, the Town contends that Seadrift's primary cause of action was for mandamus and that Seadrift's declaratory judgment action was simply an add-on, addressing issues already pending before the trial court.

It its cross-appeal, Seadrift argues that the trial court erred by denying its request for mandamus relief after Seadrift established via its declaratory judgment action that Ordinance 011's two-acre lot-size provision was

---

[6]The Town does not challenge the reasonableness of or necessity for the amount of the attorney's fees awarded to Seadrift.

16

unenforceable as violative of local government code section 212.003(a)(4). According to Seadrift, at this point, the Town's approval of the preliminary plat became a ministerial duty. *See* Tex. Loc. Gov't Code Ann. § 212.005 (West 2008) (providing that the municipal authority responsible for approving plats must approve a plat or replat that is required to be prepared under this subchapter and that satisfies all applicable regulations). Consequently, via its cross-appeal, Seadrift requests that this court issue a writ of mandamus ordering the Town to approve Seadrift's preliminary plat.

We address these two issues together because they are somewhat interrelated. It is well settled that the validity of an ordinance may be challenged through a declaratory judgment action. *See, e.g.*, *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 599–605 (Tex. App.—San Antonio 2013, pet. denied) (affirming trial court's declaratory judgment declaring ordinance invalid). It is likewise well settled that a trial court may award attorney's fees in a declaratory judgment action. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008); *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998); *Greater San Antonio Builders Ass'n*, 419 S.W.3d at 605 (affirming award of attorney's fees to prevailing party after trial court declared ordinance invalid). Thus, the issue is whether Seadrift's mandamus action somehow altered the application of these two well-settled rules.

It is true, as the Town contends, that a claim may not simply be repleaded as a declaratory judgment claim in order to justify an award of attorney's fees.

17

*See, e.g.*, *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 670 (Tex. 2009). Instead, the Declaratory Judgments Act is "intended as a speedy and effective remedy" for settling disputes before substantial damages are incurred and is "intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate the potential controversy." *Id.*

Here, Seadrift's pleaded mandamus cause of action was conditioned on the trial court's declaration that the Town's Ordinance 011 violated Texas Local Government Code section 212.003(a)(4). Seadrift conceded that only if the trial court declared the Town's Ordinance 011 invalid would Seadrift be entitled to issuance of a mandamus requiring the Town to approve its preliminary plat. Seadrift argued: "In other words, as long as the two-acre minimum lot size remains enforceable under Ordinance 11, the Town is not required to approve Seadrift's preliminary plat[,] and a writ of mandamus could not issue."

A district court is vested with original mandamus jurisdiction over county officials. *Vondy v. Comm'rs Court of Uvalde Cnty.*, 620 S.W.2d 104, 109 (Tex. 1981) (citing former Tex. Const. art. V, § 8); *Sheppard v. Thomas*, 101 S.W.3d 577, 580 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). A district court may issue a writ of mandamus to compel a public official to perform a ministerial act. *See Sheppard,* 101 S.W.at 580.[7] An act is ministerial when the law clearly spells

---

[7]Citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991) (requiring mayor to hold election on question of abolishing city's corporate

18

out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Anderson*, 806 S.W.2d at 793.

Here, the Town denied Seadrift's preliminary plat because the proposed subdivision lots in the Town's ETJ were less than two acres in size; a two-acre lot size was required by the Town's Ordinance 011. Thus, as Seadrift concedes, at the time the Town denied Seadrift's preliminary plat, no ministerial duty existed for the Town to approve the plat because the plat did not "satisfy all applicable regulations," namely Ordinance 011. Only after the trial court declared that the Town's Ordinance 011 violated the local government code could any ministerial duty have arisen for the Town to approve Seadrift's preliminary plat. Seadrift has not cited, and we have not located, any authority for the proposition that a mandamus will issue against a county official based on allegations that a ministerial duty arose *after* the county official acted or failed to act. Likewise, no summary-judgment evidence exists in the record before us that the Town has, since Ordinance 011 was declared violative of local government code section 212.003(a)(4), granted or denied Seadrift's preliminary plat. *See In re Kuster,* 363 S.W.3d 287, 290–91 (Tex. App.—Amarillo 2012, orig. proceeding) (denying petition for writ of mandamus to the extent it sought relief based of facts that had

existence); *Turner v. Pruitt*, 161 Tex. 532, 533–34, 342 S.W.2d 422, 423 (1961) (citing action against justice of peace for damages for failure to provide jury for person charged with misdemeanor criminal offense in justice of peace court); and *Bichsel v. Carver*, 159 Tex. 393, 394–95, 321 S.W.2d 284, 285 (1959) (proceeding brought to mandamus chief of police to reinstate suspended police officer).

19

not yet occurred); *Owens Corning Fiberglas Corp. v. Caldwell*, 830 S.W.2d 622, 624 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding) (holding mandamus will not issue to compel a public official to do what he has not been asked to do). Thus, the trial court did not err by denying Seadrift's motion for summary judgment on its mandamus claim. Our holding here does not prevent Seadrift from refiling its mandamus claim. We overrule the sole issue raised by Seadrift in its cross-appeal.

For these same reasons, we overrule the Town's third issue contending that Seadrift's declaratory judgment action was simply a recasting of its mandamus action. Because we affirm both the trial court's grant of summary judgment for Seadrift on Seadrift's declaratory judgment claim and the trial court's denial of Seadrift's motion for summary judgment on its claim for mandamus relief, these two claims cannot be considered the same claim. Moreover, it is the summary judgment on Seadrift's declaratory judgment action that terminated the uncertainty and the controversy between the parties, not the mandamus action; the mandamus action will lie only if there is no controversy because a ministerial duty is owed. *See Anderson*, 806 S.W.2d at 793; *see also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (recognizing that a trial court may enter a declaratory judgment so long as it will serve a useful purpose of terminating the controversy between the parties).

## VII. CONCLUSION

Having overruled the Town's three issues and having overruled the sole issue raised in Seadrift's cross-appeal, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED: September 25, 2014