

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00143-CV

---

HARRY BIZIOS                                                                          APPELLANT

V.

TOWN OF LAKEWOOD VILLAGE,                                          APPELLEE
TEXAS

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-01991-431

----------

## OPINION

----------

In this accelerated interlocutory appeal, Appellant Harry Bizios complains of the trial court's injunction requiring him to obtain permits from and allow building inspections by Appellee the Town of Lakewood Village pursuant to the Town's ordinances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2014). In his first of three issues, Bizios contends that the Town, as a Type-A general-law municipality with approximately 620 inhabitants, does not

have constitutional or statutory authority to apply its building code to its extraterritorial jurisdiction (ETJ). In his second issue, he argues that even if the Town had such authority, it does not apply here because the Town is prohibited from applying its subdivision regulations to his property under local government code section 212.007. *See* Tex. Loc. Gov't Code Ann. § 212.007 (West 2008).

The Town is surrounded by a half-mile ETJ[1] that encompasses a portion of the Sunrise Bay subdivision where Bizios started to build his home in March 2014.[2] The Town does not provide any services to the subdivision; Little Elm, a more populous home-rule city, provides water to the subdivision, each lot has an individual septic system, and Denton County maintains the subdivision's roads outside of Little Elm's city limits.[3] Little Elm and Denton County approved the subdivision's final plat in 1995. No plat was filed with the Town.

Bizios bought his lot, which is located entirely in the Town's ETJ, in 2013. Bizios applied for and received a development permit from Denton County. It is

[1]An ETJ is "the unincorporated area that is contiguous to the corporate boundaries of the municipality" and is located within a specified distance of those boundaries depending upon the municipality's population. Tex. Loc. Gov't Code Ann. § 42.021 (West Supp. 2014).

[2]The rest of the subdivision is located in Little Elm and Little Elm's ETJ.

[3]Linda Asbell, secretary for the Town, testified that the Town would charge Bizios around $14,646 as a building permit fee for his house and that the only services it would in turn supply would be "[b]uilding department services" because Bizios was not within the Town's city limits. Alan Hoffman, Bizios's homebuilder, testified that he did not see anything in the Town's building permit regulation process that would enhance the health, safety, or durability of the $1.2 million house he was building on Bizios's two-acre lot.

undisputed that short of the Town's building permit, Bizios had obtained all of the permits required to build his home. The Town sought and received a temporary injunction against Bizios to stop construction on his lot until he obtained the Town's building permit. The Town relied on local government code section 212.003 and "Chapter 212" to support its claim to relief in the trial court, contending that Bizios had violated ordinance 11-16.

While we review a trial court's grant of a temporary injunction for an abuse of discretion, *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g), the temporary injunction's validity here rests upon the trial court's construction of the local government code, which we review de novo. *See City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 357 (Tex. 2000); *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex. 1999). In construing a statute, our objective is to determine and give effect to the legislature's intent, looking first to the "'plain and common meaning of the statute's words.'" *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex. 2002) (quoting *Fitzgerald v. Advanced Spine Fixation Sys.*, *Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)); *see also* Tex. Gov't Code Ann. § 312.005 (West 2013) ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."); *Am. Home Prods. Corp. v. Clark,* 38 S.W.3d 92, 95 (Tex. 2000) ("When we construe a statute, our objective is to determine and give effect to the Legislature's intent."). If a statute's meaning is unambiguous, we generally interpret the statute according to

3

its plain meaning. *Gonzalez*, 82 S.W.3d at 327. We determine legislative intent from the entire act and not just its isolated portions. *Id.* (citing *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex. 1998)). Thus, we "'read the statute as a whole and interpret it to give effect to every part.'" *Id.* (quoting *Jones,* 969 S.W.2d at 432).

The issue here is whether the Town, as a general-law municipality, has the authority to extend its building code to its ETJ.[4] The Town argues that the legislature has given it authority to regulate development and thus to extend its building code to its ETJ under local government code sections 212.002 and 212.003; it also relies on sections 214.212, 214.904(a), and 233.153(c) to support its argument. *See* Tex. Loc. Gov't Code Ann. §§ 212.002–.003, 214.212, 214.904 (West 2008), § 233.153(c) (West Supp. 2014).

Because a municipality possesses authority to regulate land development in its ETJ only to the extent it is legislatively granted that authority, legislatively-created express limitations to that grant of authority—such as local government code section 212.003—are construed strictly against the authority of the municipality and in favor of the landowner. *Town of Annetta S. v. Seadrift Dev.,*

---

[4]This is an issue of first impression in this court. *See Rhino Real Estate Invs., Inc. v. City of Runaway Bay*, No. 02-08-00340-CV, 2009 WL 2196131, at *1 n.4, *2 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.) (disposing appeal on another ground and not reaching city's argument that it had authority under section 212.002 to extend its building code ordinances to its ETJ); *see also Hartsell v. Town of Talty*, 130 S.W.3d 325, 327–29 (Tex. App.—Dallas 2004, pet. denied) (resolving case under local government code chapter 245 instead of reaching whether town had authority to extend building code ordinance to its ETJ).

4

*L.P.*, No. 02-12-00171-CV, 2014 WL 5013292, at *2 (Tex. App.—Fort Worth Sept. 25, 2014, pet. filed); *see also FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 902 (Tex. 2000) ("[A] city's authority to regulate land development in its ETJ is wholly derived from a legislative grant of authority."); *Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 247 (Tex. App.—San Antonio 2009, pet. denied) (stating that the similarities between zoning ordinances that a municipality may adopt under section 211.003 and the list of items a municipality is prohibited from regulating under section 212.003 reveals the legislature's intent to prohibit a municipality from regulating zoning-type uses in the ETJ).[5]

Local government code chapter 212, "Municipal Regulation of Subdivisions and Property Development," contains eight subchapters, most of which are not

---

[5]A municipality's power normally ends at the city limit and does not automatically include the ETJ; rather, a city may only extend its authority to the ETJ if authorized by the State. *See Payne v. Massey*, 145 Tex. 237, 240, 196 S.W.2d 493, 495 (1946) ("Municipalities . . . possess only such powers and privileges as have been expressly or impliedly conferred upon them. All acts done by them must find authority in the law of their creation."); *City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149, 159 (Tex. App.—Amarillo 2000, no pet.) (noting that "a city may only exercise its powers within its corporate limits unless its authority is expressly extended"); *City of Sweetwater v. Hamner*, 259 S.W. 191, 195 (Tex. Civ. App.—Fort Worth 1923, writ dism'd) (holding that all the powers and privileges conferred on a municipality by the constitution and legislature apply only within the municipality's boundaries, and a municipality can only extend its power outside city limits when granted express legislative authority).

5

pertinent to the issue before us.[6]  Subchapter A, "Regulation of Subdivisions,"

contains section 212.002, "Rules," which provides that "a municipality may adopt

rules governing *plats and subdivisions* of land within the municipality's jurisdiction

to promote the health, safety, morals, or general welfare of the municipality and

the safe, orderly, and healthful *development* of the municipality."[7]  Tex. Loc. Gov't

Code Ann. § 212.002 (emphasis added).

Section 212.003(a), the first subsection under the heading, "Extension of

Rules to Extraterritorial Jurisdiction," states,

> The governing body of a municipality by ordinance may extend to
> the extraterritorial jurisdiction of the municipality the application of
> municipal ordinances adopted under Section 212.002 and other
> municipal ordinances relating to access to public roads or the
> pumping, extraction, and use of groundwater by persons other than
> retail public utilities, as defined by Section 13.002, Water Code, for
> the purpose of preventing the use or contact with groundwater that
> presents an actual or potential threat to human health.  However,
> *unless otherwise authorized by state law*, in its extraterritorial
> jurisdiction a municipality *shall not regulate*:

---

[6]Chapter 212's subchapters address not only the regulation of subdivisions and property development but also enforcement of land-use restrictions in plats and other instruments, developer sureties, school land development, county-owned buildings, and apportionment of municipal infrastructure costs, among others.  *See generally* Tex. Loc. Gov't Code Ann. §§ 212.001–.904 (West 2008 & Supp. 2014).

[7]Subchapter A does not define "development."  Subchapter B defines "development" for that subchapter's purposes.  Tex. Loc. Gov't Code Ann. § 212.043(1).  Although the Town relies on "development" as mentioned in section 212.002 to support its argument, nothing in subchapter B states that its definitions apply to any other subchapter, and the Town states in its appellate brief that subchapter B does not apply to it.

(1) the use of any building or property for business, industrial, residential, or other purposes;

(2) the bulk, height, or number of buildings constructed on a particular tract of land;

(3) the size of a building that can be constructed on a particular tract of land, including without limitation any restriction on the ratio of building floor space to the land square footage;

(4) the number of residential units that can be built per acre of land; or

(5) the size, type, or method of construction of water or wastewater facility that can be constructed to serve a developed tract of land [upon various conditions not at issue here].

*Id.* § 212.003(a) (emphasis added).[8]  As we stated in *Town of Annetta South*, "The purpose of these restrictions on a municipality's authority to impose regulations on land in the municipality's ETJ is to prohibit the municipality's extension of zoning ordinances into its ETJ under the guise of cleverly drafted rules 'governing plats and subdivisions of land.'"  2014 WL 5013292, at *3. Therefore, unless otherwise authorized by state law, per section 212.003(a)'s plain language, a municipality cannot extend its ordinances as to the use of any building or the bulk, height, or size of such buildings, among other things, into its

---

[8]In comparison, local government code chapter 211 addresses general zoning regulations within a municipality and permits the governing body of a municipality to regulate the height, number of stories, and size of buildings and other structures; the percentage of a lot that may be occupied; the size of yards, courts, and other open spaces; and the location and use of buildings and land for residential purposes, among other things.  *See* Tex. Loc. Gov't Code Ann. § 211.003 (West 2008).

ETJ, which is what the Town purports to do in ordinance 10-01.[9]  *See id.*; *see also* Tex. Loc. Gov't Code Ann. § 212.003(a)(1)–(2) (prohibiting regulation in the ETJ of use of buildings or bulk, height, or number of buildings without express authorization by other state law); *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 491 (Tex. 1993) (stating that an ordinance that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with a state statute).

Further, section 212.007(a) provides that for "a tract located in the extraterritorial jurisdiction of more than one municipality, *the authority responsible for approving a plat under this subchapter is the authority in the municipality with*

---

[9]Under ordinance 10-01, the Town seeks to apply its "uniform and minimum standards for the construction, erection, and maintenance of buildings and other structures in order to protect and promote the public health, safety, and welfare of the citizens of the Town and the Extraterritorial Jurisdiction of the Town."  Ordinance 10-01 contains the following new construction requirements, among others: "[t]here shall be a garage size requirement on all new construction of a minimum of 25 feet in width and 22 feet in depth," "[t]here shall be no buildings, residential or commercial, that exceed 35 foot in height," and "[s]econdary structures will be permitted as new construction with minimum square footage requirements waived as long as secondary structure is contained within the property lines of the primary residence lot(s) and required set backs are met."  For this, and other services, the Town charges the following fees: $1.25 for each square foot of the building in the ETJ for a building permit; $250 for flatwork, other than foundations, such as sidewalks, driveways, and patios for the first two inspections, followed by $75 per inspection after the second inspection; 65% of the building permit fee as a plan review fee, which "is a separate fee from all other fees and is in addition to the permit fee"; annual registration fees of $500 for a general contractor and $100 for subcontractors— the Town requires contractors to submit to its registration process to work on the construction job; $150 for a fence permit; $150 for a sprinkler permit; $150 for an electrical permit; $150 for a plumbing permit; and $500 as a Board-of-Appeals fee for structures over 5,001 square feet, among others.

*the largest population.*"[10]  Tex. Loc. Gov't Code Ann. § 212.007(a).  As reflected through the testimony at the hearing, Little Elm, not the Town, had the authority to approve the plat for Bizios's subdivision and did so in 1995.

Subchapter B of chapter 212, "Regulation of Property Development," grants a municipality the authority to adopt plans, rules, or ordinances governing development plats of land within its limits and in its ETJ.  *Id.* § 212.044. "Development" under subchapter B means "the new construction or the enlargement of any exterior dimension of any building, structure, or improvement."  *Id.* § 212.043(1).  Anyone who proposes to develop a tract of land located in the municipality or its ETJ under this subchapter must have a development plat of the tract prepared in accordance with the applicable plans, rules, or ordinances of the municipality, *id.* § 212.045(a), but if a person is required under subchapter A or another ordinance to file a subdivision plat, "*a development plat is not required in addition to the subdivision plat*," *id.* § 212.045(d) (emphasis added).

---

[10]Although the Town argues that the "tract" at issue here was Bizios's lot, which was entirely within its ETJ, in the context of subchapter A of chapter 212, which covers regulation of subdivisions, we understand the reference to "tract" here to mean a larger tract that has been subdivided into lots, per the plat requirement set out in section 212.004, which states, in pertinent part, "The owner of a tract of land located within the limits or in the extraterritorial jurisdiction of a municipality who divides the tract in two or more parts to lay out a subdivision of the tract . . . must have a plat of the subdivision prepared."  Tex. Loc. Gov't Code Ann. § 212.004(a).

To obtain the authority to require a development plat under subchapter B, the municipality must adopt subchapter B, and the Town has not done so. *See id.* § 212.041. Any provisions of subchapter A that do not conflict with subchapter B apply to subchapter B's development plats. *Id.* § 212.042. While the municipality, county, or other official who issues building or other development permits may not issue a permit for lots or tracts subject to this subchapter until a development plat is filed with and approved by the municipality under section 212.047,[11] *id.* § 212.046, "[t]*his subchapter does not authorize the municipality to require municipal building permits or otherwise enforce the municipality's building code in its extraterritorial jurisdiction*," *id.* § 212.049 (emphasis added). Because the subdivision plat of Bizios's neighborhood was already approved by the municipality with authority to approve it, and because even if Little Elm had not previously approved the subdivision plat, the Town has

---

[11]Section 212.047 provides that a municipality shall endorse approval on a development plat filed with it if the plat conforms to the general plans, rules, and ordinances of the municipality concerning its current and future streets, sidewalks, alleys, parks, playgrounds, and public utility facilities, as well as the general plans, rules and ordinances for the extension of the municipality or the extension, improvement, or widening of its roads, streets, and public highways in the municipality and its ETJ, taking into account access to and extension of sewer and water mains and instrumentalities of public utilities, as well as any general plans, rules, or ordinances adopted under section 212.044. Tex. Loc. Gov't Code Ann. § 212.047. Approval of a development plat is not considered an acceptance of any proposed dedication for public use or use by persons other than the owner of the property covered by the plat and does not impose on the municipality any duty regarding the maintenance or improvement of any purportedly dedicated parts until the municipality's governing body makes an actual appropriation of the dedicated parts by formal acceptance, entry, use, or improvement. *Id.* § 212.048.

not adopted subchapter B, subchapter B does not apply here, but the existence of subchapter B shows some evidence of the legislature's intent that a municipality not be authorized to enforce its building code in its ETJ.[12]  *See id.* § 212.049.

---

[12]The Town argues that under section 212.003, it can adopt a building code in its ETJ because of the use of the word "development" in section 212.002 and that subchapter A authorizes the extension because extending its building code promotes development.  However, when the legislature enacts a statute, it is presumed that "the entire statute is intended to be effective."  Tex. Gov't Code Ann. § 311.021(2) (West 2013).  If the Town's interpretation were correct and section 212.002 included the regulation of development of housing under subchapter A, then there would be no reason for Subchapter B.

Before the legislature added subchapter B, the Dallas Court of Appeals held that "subdivision of land suggests development."  *City of Lucas v. N. Tex. Mun. Water Dist.*, 724 S.W.2d 811, 818 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (op. on reh'g).  This case was decided under article 970a, section 4 of the revised civil statutes, which became section 212.003.  *Id.* at 817–18, 820.  Article 970a, section 4 provided, in pertinent part, "The governing body of any city may extend by ordinance to all of the area under its extraterritorial jurisdiction the application of such city's ordinance establishing rules and regulations governing plats and the subdivision of land."  Act of April 25, 1963, 58th Leg., R.S., ch. 160, § 4, 1963 Tex. Gen. Laws 449, 449, *repealed by* Act of April 30, 1987, 70th Leg., R.S., ch. 149, § 49, 1987 Tex. Gen. Laws 1306, 1306–08.  As set out above, section 212.003 contains substantially more limitations on a municipality's authority to extend its subdivision rules into its ETJ.  *See* Tex. Loc. Gov't Code Ann. § 212.003(a).  In *Lucas*, on rehearing, the court clarified that the city's requirement of a building permit before construction in its ETJ was supported by article 970a because "use of the term [subdivision] is not restricted to the division itself but also encompasses the development of the divided tracts."  *Id.* at 823.  The court concluded that the power over subdivisions conferred by article 970a "necessarily or fairly implies a right to issue regulations governing construction of housing, buildings, and the components thereof."  *Id.* at 823–24.  When the court decided *Lucas*, it might have been logical to infer this meaning because the legislature had not spoken otherwise; after *Lucas*, however, the legislature added restrictions to section 212.003(a) and added subchapter B, distinguishing "development" as separate from "subdivision and plats."  *See* Tex. Loc. Gov't Code Ann. § 212.043(1) (defining "development"); *City of Austin v. Jamail*, 662

11

We have also reviewed chapter 214, which governs municipal regulation of housing and other structures, and chapter 233, which governs the same as to counties. *See id.* §§ 214.001–.906 (West 2008), §§ 233.001–.901 (West 2005 & Supp. 2014). Subchapter G of chapter 214, "Building and Rehabilitation Codes," provides that the International Residential Code "is adopted as a municipal residential building code in this state." *Id.* §§ 214.211–.212(a). However, the legislature restricted its application to "all construction, alteration, remodeling, enlargement, and repair of residential structures *in a municipality*." *Id.* § 214.212(b) (emphasis added). Although section 214.904, "Time for Issuance of Municipal Building Permit," states that "[t]his section applies only to a permit required by a municipality to erect or improve a building or other structure in the municipality or its extraterritorial jurisdiction," *id.* § 214.904, we read this section in conjunction with the rest of the subchapter to apply to the municipalities granted such capacity, i.e., home-rule municipalities, *see, e.g.*, *id.* § 214.901 (stating that a home-rule municipality may require that the construction of buildings comply with the energy conservation standards in the municipal building code), and in the context of other specific local government code provisions that expressly grant authority to extend a regulation into an ETJ. *See*

_____

S.W.2d 779, 781 (Tex. App.—Austin 1983, writ dism'd) (noting that the court must give effect to the more specific statute so as not to make it superfluous); *see also* Tex. Gov't Code Ann. § 311.026(a) (West 2013) ("If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.").

12

*id.* § 216.902 (West 2008) (authorizing municipality to extend outdoor sign regulation to ETJ), § 372.003 (West Supp. 2014) (authorizing municipality to undertake improvement project in ETJ), § 377.002 (West 2005) (authorizing municipality to create municipal development district in ETJ), § 382.109 (West Supp. 2014) (requiring road projects to meet all applicable standards of each municipality in whose ETJ a district improvement project is located), § 395.011 (West 2005) (authorizing municipality to impose impact fee in ETJ).

Subchapter F of chapter 233, "Residential Building Code Standards Applicable to Unincorporated Areas of Certain Counties," was adopted by order of the Denton County Commissioners Court in January 2010 to apply to "certain residential construction in unincorporated areas of Denton County." *See id.* § 233.152. This subchapter requires new residential construction in an area of the county to which the subchapter applies to conform with the International Residential Code unless "a municipality located within a county to which this subchapter applies has adopted a building code in the municipality's extraterritorial jurisdiction," in which case the municipality's building code controls "and building code standards under this subchapter have no effect in the municipality's extraterritorial jurisdiction." *Id.* § 233.153(a), (c). Again, as nothing in the local government code explicitly authorizes a general law municipality to extend its building code to its ETJ, we read this section as applying to home-rule municipalities because a general-law municipality can exercise only those powers that the legislature confers on it by law. *See City of W. Lake Hills v.*

13

*Westwood Legal Defense Fund*, 598 S.W.2d 681, 683 (Tex. Civ. App.—Waco 1980, no writ).[13]    Because none of the statutes referenced by the Town expressly grant a general-law municipality the authority to extend its building code into its ETJ, and because we have otherwise found none that does so, the trial court abused its discretion by granting the injunction.  *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004) ("General-law municipalities . . . are political subdivisions created by the State and, as such, possess those powers and privileges that the State expressly confers upon them."); *cf.* Tex. Loc. Gov't Code Ann. § 51.072 (West 2008) (stating that a home-rule municipality "has full power of local self-government"); *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) (op. on reh'g) ("While a home rule city . . . has all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter, Tex. Const. art. XI, § 5, these broad powers may be limited by statute when the Legislature's intention to do so appears 'with

---

[13]That is, we read these sections to mean that *if* a municipality—i.e., a home-rule municipality—already has the authority to extend its building code to its ETJ, then it is subject to these sections.  *See id.* § 214.901 (allowing a home-rule municipality to require that building construction comply with its municipal building code's energy conservation standards), § 214.904(b)–(d) (setting out timing requirements for the issuance of a permit).  In order for power to be implicitly granted, it should be "reasonably incident to those expressly granted," *see City of W. Lake Hills*, 598 S.W.2d at 683, and as set out above, the local government code does not expressly grant to a general law municipality the authority to extend any portion of its building code to the ETJ.  If the legislature had intended for a general-law municipality to extend its building code into the ETJ, it would have expressly granted that authority.  *Cf.* Tex. Loc. Gov't Code Ann. §§ 216.902, 372.003, 377.002, 382.109, 395.011.

14

unmistakable clarity.'"); *Forwood v. City of Taylor,* 147 Tex. 161, 167, 214 S.W.2d 282, 286 (1948) (explaining that a home rule municipality has full authority to do anything the legislature could have authorized it to do). We sustain Bizios's first and second issues and, based on our disposition here, we do not reach his remaining issue pertaining to vested rights under local government code chapter 245. *See* Tex. R. App. P. 47.1.

Having sustained Bizios's dispositive issues, we reverse the trial court's order and remand the case to the trial court for further proceedings.

/s/ Bob McCoy
BOB MCCOY
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED: December 31, 2014

15