

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00058-CV

**DIAMOND ENVIRONMENTAL MANAGEMENT, L.P.**; Bexar County Emergency Service District No. 5; and Bexar County Emergency Service District No. 10,
Appellants

v.

**CITY OF SAN ANTONIO, TEXAS**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-26125
Honorable Aaron Haas, Judge Presiding

### CORRECTED OPINION

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Irene Rios, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: September 21, 2022

AFFIRMED

This appeal comes before this court after the trial court granted appellee's plea to the jurisdiction based on standing and sovereign immunity. On May 18, 2022, we issued an opinion and judgment affirming the trial court's judgment. On June 16, 2022, two appellants filed a motion for rehearing and for en banc reconsideration. We deny the motion for rehearing, but we withdraw our May 18, 2022 opinion and judgment, and we substitute this opinion and judgment in its place. We affirm.

## BACKGROUND

Approximately a decade ago, the City of San Antonio ("COSA") began to annex certain properties within its extra-territorial jurisdiction. The annexation process is governed by statute. By statute, landowners who then used their property for agricultural, wildlife management, or timber purposes could delay COSA's annexation by entering into a development agreement. *See* TEX. LOC. GOV'T CODE § 43.016. The contours of development agreements are statutorily dictated. *See id.* § 212.172. If a landowner either (1) consents to annexation or (2) declines to enter into a development agreement offered by COSA, the annexation may immediately proceed. *Id.* § 43.016(b).

Beginning in December 2013, COSA consummated development agreements with certain landowners. One of these landowners is appellant Diamond Environmental Management, LP ("DE"). According to COSA, all landowners (including DE) later breached the development agreements, and upon breach, the terms of the development agreements authorized immediate annexation. Purportedly exercising this right, COSA notified landowners of alleged breaches (and COSA's intent to annex the properties) in late 2019.

Appellants Bexar County Emergency Service District No. 5 ("BCESD No. 5") and Bexar County Emergency Service District No. 10 ("BCESD No. 10") provide emergency fire, medical, and rescue services to protect persons and property in their respective geographic service areas.[1] After the landowners' alleged breaches, COSA asserts it provided notice to the BCESDs[2] both

---

[1] The specific properties are: (1) 23.74 acres, owned by J.C. Pace, Ltd., located in BCESD No. 5; (2) 1,269.04 acres, owned by Edwin William Ripps Jr., et al., located in BCESD No. 5 (the "Ripps Property"); (3) 22.764 acres, owned by David and Linda Friesenhahn, located in BCESD No. 5; (4) 21.23 acres, owned by Gerardo Castruita, located in BCESD No. 5; (5) 239.9 acres, owned by Anthony Volner, located in BCESD No. 5; (6) 126.3 acres, owned by Volner Partnership II, Ltd., located in BCESD No. 5; and (7) 36.457, 10.7020, and 20.646 acres, owned by RC Heritage Oaks, LLC, located in BCESD No. 10.

[2] For brevity, we collectively refer to BCESD No. 5 and BCESD No. 10 as the "BCESDs."

before and after annexation. The BCESDs assert COSA's notices were insufficient and annexation was improper.

On December 12, 2019, COSA approved Ordinance No. 2019-12-12-1071 (the "Ordinance") annexing the properties effective December 31, 2019. On December 30, 2019, BCESD No. 5 initiated the underlying litigation against COSA seeking injunctive and declaratory relief. BCESD No. 10 and DE later joined and likewise sought injunctive and declaratory relief. COSA filed a plea to the jurisdiction asserting (1) appellants lack standing to pursue their claims and (2) COSA is immune from suit. The trial court granted COSA's plea to the jurisdiction and dismissed appellant's claims for lack of jurisdiction. This appeal followed.

## STANDARD OF REVIEW

To establish subject matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Plaintiffs also bear the burden of establishing a waiver of sovereign immunity in suits against the government. *Id.* A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Id.*; *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.).

Our de novo review looks to the pleader's intent and construes the pleadings in its favor. *Houston Belt*, 487 S.W.3d at 160. But where a defendant presents evidence to challenge the existence of jurisdictional facts, as here, we are "not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Shady Shores*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

"When a jurisdictional issue is not intertwined with the merits of the claims . . . disputed fact issues are resolved by the court, not the jury." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) (per curiam). When jurisdiction implicates the merits, we review the plea as a matter of law if relevant evidence is undisputed or fails to raise a fact question. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *see also City of San Antonio v. Rosenbaum*, No. 04-11-00498-CV, 2011 WL 6739583, *1 (Tex. App.—San Antonio Dec. 21, 2011, no pet.) (mem. op.). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28.

## DE's Appeal

The trial court's final judgment does not delineate the specific grounds on which it relied to dismiss DE's claims:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the City of San Antonio's Amended Plea to the Jurisdiction as to Diamond Environmental Management, L.P.'s claims be and is hereby granted and that all of Diamond Environmental's claims against the City are dismissed for lack of jurisdiction . . .

"When a separate and independent ground that supports a judgment is not challenged on appeal, [we] must affirm." *Harris v. Gen. Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.—San Antonio 1996, writ denied) (quoting *San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 65 (Tex. App.—San Antonio 1993, no writ)); *Fitzsimmons v. Killeen Indep. Sch. Dist.*, No. 03-19-00535-CV, 2020 WL 4726697, at *2 (Tex. App.—Austin Aug. 14, 2020, pet. denied) (mem. op.) ("If an appellant does not challenge every ground that could have independently supported the trial court's ruling, 'we must accept the validity of the unchallenged ground and affirm the adverse ruling.'").

On appeal, DE failed to address two independent grounds supporting the trial court's judgment. First, COSA challenged DE's standing by arguing only the State can complain of

procedural defects in annexation via a quo warranto proceeding. Second, COSA argued that DE could not demonstrate a "special burden" required in the annexation context to establish standing. Both grounds implicate DE's standing. Because DE failed to address these grounds on appeal, we must affirm the judgment as to DE on those grounds. *See Harris*, 924 S.W.2d at 188; *Bechtel Corp. v. City of San Antonio*, No. 04-04-00910-CV, 2006 WL 228689, at *4 (Tex. App.—San Antonio Feb. 1, 2006, no pet.) (mem. op.); *see also Carter v. Dallas City Plan Comm'n*, No. 05-20-00190-CV, 2021 WL 777088, at *3 (Tex. App.—Dallas Mar. 1, 2021, pet. denied) (mem. op.).

### THE BCESDs' APPEAL

COSA is immune from suit unless the Legislature has expressly waived immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 330 (Tex. 2006). On appeal, the BCESDs assert three statutory waivers of immunity.[3] We take each in turn.

### *Section 43.908 of the Texas Local Government Code*

The BCESDs first assert waiver of immunity under section 43.908 of the Texas Local Government Code: "A political subdivision's immunity from suit is waived in regard to an action under this chapter." TEX. LOC. GOV'T CODE § 43.908(b). COSA argues this waiver is inapplicable because the BCESDs do not assert an action "under" Chapter 43; rather, according to COSA, the actions arise under the development agreements promulgated under Chapter 212. *See id.* In response, the BCESDs assert three claims arise "under" Chapter 43: (1) COSA failed to provide statutorily-compliant notice to the BCESDs prior to annexation under section 43.9051; (2) COSA failed to offer development agreements to all landowners as required under section 43.016(b); and (3) the Ordinance is impermissibly predicated on consent that was "voided" by the express terms

---

[3] Appellees raised a fourth basis grounded in the language of the development agreements in the trial court but abandoned the argument on appeal.

of the development agreements upon their breach by the landowners. We address each assertion in turn.

*Notice to the BCESDs*

The BCESDs assert that COSA failed to provide statutorily-mandated notices prior to annexation.[4] *See* TEX. LOC. GOV'T CODE § 43.9051. The parties dispute whether notice to the BCESDs under Chapter 43 is required prior to COSA's annexation, but we need not reach that issue because we find COSA's pre-annexation notices satisfied the requirements of section 43.9051.

Section 43.9051(d) sets forth the requirements of certain pre-annexation notices. "A notice . . . shall contain a description of: (1) the area proposed for annexation; (2) any financial impact on the public entity . . . resulting from the annexation, including any changes in the public entity's or political subdivision's revenues or maintenance and operation costs; and (3) any proposal the municipality has to abate, reduce, or limit any financial impact on the public entity. . ." *Id.* § 43.9051(d).

The BCESDs' pleadings incorporate and attach COSA's pre-annexation notices. Attached to the notices are maps of the subject properties and tables identifying property: (1) addresses; (2) Bexar County Appraisal District ("BCAD") property IDs; (3) owners; (4) legal descriptions; (5) acreage; (6) counsel districts; (7) development agreement original effective dates; and (8) development agreement original termination dates.

---

[4] In their reply brief, the BCESDs assert the sufficiency of notice is "irrelevant to the determination of subject matter jurisdiction." But this assertion directly contradicts their argument that waiver arises under Chapter 43 because of COSA's alleged statutorily insufficient notice. Because jurisdiction and the merits are intertwined with regards to this claim, we review the plea as a matter of law if relevant evidence is undisputed or fails to raise a fact question. *Miranda*, 133 S.W.3d at 227–28.

This information satisfies the requirement to describe the area proposed for annexation. *Id.* § 43.9051(d)(1); *cf. In re Estate of Garcia*, No. 04-06-00120-CV, 2007 WL 748651, at *1 (Tex. App.—San Antonio Mar. 14, 2007, pet. dism'd) (mem. op.) ("The sufficiency of the legal description in any instrument transferring a property interest is a question of law. For a legal description to be sufficient, the writing must furnish within itself or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.") (citing *Haines v. McLean*, 276 S.W.2d 777, 781–82 (Tex. 1955) and *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)).

The notices also described the financial impacts to the BCESDs as potential reductions in ad valorem taxes, sales taxes, and use taxes:

> In accordance with the Texas Local Government Code, you are being informed that upon the effective date of annexation, December 31, 2019, the proposed annexation areas will be incorporated into the municipal boundary of the City of San Antonio and removed from your district's territory and tax rolls. This annexation may result in a reduction in your district's ad valorem, sales, and use taxes, as also described in the Texas Local Government Code.

The plain language of the statute requires only a description of the financial impact—not a particular calculation as the BCESDs suggest.[5] *See* TEX. LOCAL GOV'T CODE § 43.9051(d)(2). By describing potential reductions to ad valorem taxes, sales taxes, and use taxes, the notices facially comply with the statutory requirement to describe "any financial impact . . . resulting from the annexation." *See id.*

---

[5] While the information necessary to ascertain the precise monetary impact to the BCESDs is peculiarly within the BCESDs' knowledge, the notices incorporated BCAD property IDs from which the BCESDs could ascertain historical tax revenues and project future negative impacts on their tax revenues. In fact, in their supplemental response to COSA's plea to the jurisdiction, the BCESDs attached a copy of COSA's notice containing handwritten calculations on the table with respect to some annexed properties.

The BCESDs also assert the notices were insufficient because they failed to include a proposal by COSA to abate, reduce, or limit any financial impact on the BCESDs. However, the statute does not require COSA to create any such proposal; it only requires COSA to provide a description of "any proposal" COSA "has." *See id.* § 43.9051(d)(3). Absent a legislative mandate to create a proposal, COSA was not required to do so. Because COSA did not create a financial abatement proposal, it did not have one to describe. Thus, COSA's notices were not insufficient due to a failure to describe non-existing proposals. *See id.* (requiring a description of "any" proposal that COSA "has").

The BCESDs' pleadings and the record establish the sufficiency of COSA's pre-annexation notices. Accordingly, we hold COSA's pre-annexation notices satisfied each of the statutory requirements as a matter of law and overrule the BCESDs' arguments to the contrary. *See id.* § 43.9051(d).

*Failure to Offer Development Agreements to All Landowners*

Next, the BCESDs assert waiver under Chapter 43 because COSA failed to offer development agreements to certain of the affected landowners; specifically:

> The duty to offer when annexation is proposed is an initial and distinct one, specifically required by Texas Local Government Code § 43.016(b). The violation of this obligation is clearly actionable under § 43.908. . . . [COSA] wholly failed to offer development agreements to all owners of the 1269-acre Ripps Property.[6]

Even assuming the BCESDs have standing to complain about COSA's alleged failure to enter into agreements with third parties, we cannot reach the merits of this argument. COSA raised two defenses to this claim in the trial court: the non-signatories' third-party beneficiary status and estoppel. The trial court's judgment could rest on those points. *See Harris*, 924 S.W.2d at 188;

---

[6] We note this argument only affects a portion of one of the annexed properties—an undivided 75% of the Ripps Property.

*Bechtel*, 2006 WL 228689, at \*4. The BCESDs did not challenge these grounds in their opening brief, and we decline to consider the issue raised for the first time in their reply brief. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 72 (Tex. App.—San Antonio 2011, no pet.).

*Classification of Development Agreements as "Void"*

According to the BCESDs, if the landowners breached the development agreements, the development agreements by their own terms are void ab initio. Being void ab initio, the BCESDs assert COSA failed to offer and execute development agreements with any of the landowners in the first instance—i.e. COSA did not comply with sections 43.016 and 212.172. This argument impermissibly cherry-picks the use of "void" in one provision of the development agreements. *See AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 296 (Tex. 2020) ("When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless.") (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)).

Reviewing the entirety of the development agreements, the parties' intent is to delay annexation for the lesser of an agreed term or a triggering event: Annexation remains prohibited as long as the agreements remain effective; annexation is authorized (and consent is deemed) when the agreements terminate. The BCESDs' reading of "void" in paragraph 3 renders most of the language in the development agreements meaningless. Numerous other provisions clarify the intent of the parties that (1) the properties remain in COSA's extraterritorial jurisdiction while the agreements remain effective; and (2) upon termination, annexation is deemed to be with the consent of the owners.

A strict construction of the singular use of the word "void" impermissibly leads to an absurd result: to pretend COSA never complied with its statutory obligation to offer development agreements. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam)

("[U]nder general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results.") (citing *Transcon Ins. Co. v. Crump*, 330 S.W.3d 211, 227 (Tex. 2010) (applying rule in statutory construction)).

We also cannot divorce the use of the word "void" from its broader context. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("Language cannot be interpreted apart from context. The meaning of a word that appears ambiguous when viewed in isolation may become clear when the word is analyzed in light of the terms that surround it."). The use of the word "void" in the development agreements is modeled on the use of the word "void" in section 43.016(d). Section 43.016(d) provides, "a provision of a development agreement . . . that restricts or otherwise limits the annexation . . . is void if the landowner files any type of subdivision plat . . ." TEX. LOC. GOV'T CODE § 43.016(d). Notably, this section operates to void *the provision restricting annexation*—paving the way for annexation to proceed. Accordingly, we reject the BCESDs' interpretation of the development agreements as void ab initio—a precondition to their assertion that their claim arises under Chapter 43.

Because the BCESDs' claims do not arise under Chapter 43, we hold the BCESDs failed to meet their burden of establishing waiver of immunity under Chapter 43 and overrule the BCESDs' arguments to the contrary.

### Section 245.006 of the Texas Local Government Code

The BCESDs next assert waiver of immunity arising under section 245.006 of the Texas Local Government Code. To invoke waiver of immunity under section 245.006, the plaintiff should allege facts sufficient to demonstrate that its claims come within the scope of Chapter 245. *See City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 116 (Tex. App.—Dallas 2013, no pet.).

In support of their argument that their claims come within the scope of Chapter 245, the BCESDs proffer a simple syllogism stringing together two chapters of the Local Government Code: (a) "an agreement under this subchapter [Subchapter G of Chapter 212 (addressing development agreements)] constitutes a permit under Chapter 245," TEX. LOC. GOV'T CODE § 212.172(g); and (b) "[a] political subdivision's immunity from suit is waived in regard to an action under this chapter [Chapter 245]," *Id.* § 245.006(b); therefore, (c) Chapter 245 waives immunity for development agreements.

Although this argument appears to be directed at the development agreements proper, the BCESDs' briefing is unclear whether they assert Chapter 245 waiver arises under the Ordinance, the development agreements, or both. Because the briefs at times conflate the two, we begin our analysis with the Ordinance.

*The Ordinance*

COSA contends one of Chapter 245's exemptions applies to the Ordinance and, therefore, Chapter 245 waiver is inapplicable here: "*This chapter does not apply* to . . . regulations for annexation that do not affect landscaping or tree preservation or open space or park dedication." *Id.* § 245.004(7) (emphasis added). The Ordinance is a regulation for annexation. But if the Ordinance does not affect (1) landscaping, (2) tree preservation, (3) open space, or (4) park dedication, it is exempt from the application of Chapter 245—including its waiver of immunity. *See id.*; *see also Village of Tiki Island v. Permier Tierra Holdings, Inc.*, 464 S.W.3d 435, 440 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[C]hapter 245 contains a number of exemptions from its operation, including certain municipal zoning regulations and other specified land use regulations"). Because these terms are not defined in the statute and the statute does not clearly indicate a different result, we give them their common, ordinary meaning. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017);

*see also Hatchett v. W. Travis Cnty. Pub. Util. Agency*, 598 S.W.3d 744, 752 (Tex. App.—Austin 2020, pet. denied) (applying ordinary meaning to "utility connections" when construing exemption under subsection (8)).

Applying the common and ordinary meaning of these terms, we conclude the Ordinance does not affect landscaping, tree preservation, open space, or park dedication. Accordingly, the Ordinance is expressly exempted from the application of Chapter 245. *See* Tex. Loc. Gov't Code § 245.004(7) ("*This chapter does not apply* to . . ."). Being exempted from the application of Chapter 245, the Ordinance cannot form a basis for a waiver of immunity under it. *See id.* § 245.006(b) ("A political subdivision's immunity from suit is waived in regard to an action *under this chapter*") (emphasis added).

*The Development Agreements*

Our analysis of the statutory exemption is limited to the Ordinance because the plain language of the exemption applies only to "regulations for annexation," and the development agreements are not "regulations." *See id.* § 245.004(7); *see also City of Buda v. N.M. Edificios LLC*, No. 07-20-00284-CV, 2021 WL 1522458, at *3 (Tex. App.—Amarillo Apr. 16, 2021, pet. filed) (mem. op.) ("[W]e find nothing in § 212.172 of the Local Government Code stating that a development agreement (and its status as a permit) constitutes a regulation . . ."). Therefore, we next determine whether Chapter 245's waiver of immunity arises under the development agreements.[7]

Under one statutory provision, development agreements "constitute[] a permit under Chapter 245." Tex. Loc. Gov't Code § 212.172(g). Yet, this language appears directly

---

[7] Our analysis assumes without deciding the BCESDs have standing to pursue claims arising under section 245.006 of the Texas Local Government Code exclusively through the development agreements.

contradictory to another section: "A development agreement described by [section 43.016(b)(1) of the Texas Local Government Code] is not a permit for purposes of Chapter 245." *Id.* § 43.016(e).

According to the BCESDs, the two provisions do not conflict because the latter provision refers to the *offer* to enter into a development agreement while the former refers to the development agreement itself. Because the landowners here consummated development agreements, the BCESDs assert the development agreements constitute permits under Chapter 245, and the Legislature waived immunity from suit. *Id.* §§ 212.172(g), 245.006(b). COSA responds that the BCESDs' interpretation fundamentally misunderstands the interplay of various provisions of the Local Government Code. We find COSA's analysis persuasive and supported by a holistic contextual reading of the statutory scheme. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) ("In construing a statute, our objective is to determine and give effect to the Legislature's intent. We determine legislative intent from the entire act and not just isolated portions. Thus, we 'read the statute as a whole and interpret it to give effect to every part.' Therefore, when interpreting [a provision], we must consider its role in the broader statutory scheme.") (internal citations omitted).

"Generally, the right to develop property is subject to intervening regulatory changes." *City of Floresville v. Starnes Inv. Grp., LLC*, 502 S.W.3d 859, 869 (Tex. App.—San Antonio 2016, no pet.). As a result, "[s]ection 245.002 establishes that municipal regulatory agencies must consider a permit application under the terms of the ordinances that were in effect at the time a permit, development plan, or plat application was filed." *City of Houston v. Commons at Lake Houston, Ltd.*, 587 S.W.3d 494, 499 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These statutory rights are known as "vested rights"—rights that attach to a project, not a particular property owner. *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 601 (Tex. App.—San Antonio 2013, pet. denied).

"The effect of vested rights under Chapter 245 of the Local Government Code is to 'freeze' the land use regulations as they existed at the time the first permit application was filed through completion of the 'project:' in other words, a project with vested rights is not subject to intervening regulations or changes after the vested date." *Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 248 (Tex. App.—San Antonio 2009, pet. denied); *see also* TEX. LOC. GOV'T CODE § 245.001(3) (defining "project" as "an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor."); *City of Buda*, 2021 WL 1522458, at *2–3 ("Chapter 245 of the Code generally freezes the land-use regulations applicable to a land development project to those existing when the developer first applied for a permit.") (citing *Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247, 249 (Tex. App.—Austin 2011, pet. denied)); *Bauer v. City of Waco*, No. 10-19-00020-CV, 2020 WL 7253430, at *2 (Tex. App.—Waco Dec. 9, 2020, no pet.) (mem. op.) ("Generally, Chapter 245 of the Local Government Code recognizes a developer's 'vested rights' in a project and requires a regulatory agency to review a permit application based on the regulations in effect at the time the original application is filed.").

By characterizing a development agreement as a "permit" under Chapter 245, section 212.172(g), along with Chapter 245, serves to freeze land use regulations in existence at the time of the original permit for a future project. Section 245.006 then provides a mechanism to enforce the land-use regulations in effect at the time of the original development agreement even if there has been some intervening regulatory change that would otherwise impair the development project at issue.

The BCESDs' pleadings confirm they do not seek to enforce any land-use regulation in effect when the landowners signed the development agreements or for a particular project for which the development agreements might constitute a permit under Chapter 245. *See City of*

*Dickinson v. Stefan*, 611 S.W.3d 654, 662 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("Stefan does not allege in his pleading that he has a vested right . . . does not mention the word 'project' or assert that his claims involve any project . . . [and] does not assert in his live pleading that any entity considered his application for a permit based on orders, regulations, ordinances, rules, expiration dates, or other requirements that took effect after Stefan filed the original application for the permit. Nothing in the pleading suggests Stefan seeks relief under chapter 245.").

We conclude the absence of any pleading seeking to freeze regulations is fatal to the BCESDs' assertion of waiver under Chapter 245. *See City of Floresville*, 502 S.W.3d at 869–70 ("Starnes does not argue the City's zoning laws in effect in March 2012 should be frozen and applied to it in September 2013. Thus, Starnes's allegations do not trigger application of chapter 245."); *Save Our Springs All. v. City of Austin*, 149 S.W.3d 674, 682 (Tex. App.—Austin 2004, no pet.) ("Stratus and the City are not seeking to apply pre-Ordinance development regulations to requested permits, a situation that would trigger the statutory requirements and exceptions of chapter 245.").

Having concluded neither the Ordinance nor development agreements implicate Chapter 245's waiver of immunity, we hold the BCESDs failed to meet their burden of establishing waiver of immunity under Chapter 245 and overrule the BCESDs' arguments to the contrary.

### Sections 37.004 and 37.006 of the Texas Civil Practice and Remedies Code

The BCESDs finally assert waiver of sovereign immunity under the Uniform Declaratory Judgments Act's ("UDJA") authorization of declaratory judgment actions to answer questions of construction or validity arising under legislative enactments of governmental entities—here, the Ordinance. Essentially, the BCESDs assert the UDJA broadly waives immunity with respect to all requested relief.

"While the [UDJA] waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity." *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) (citing TEX. CIV. PRAC. & REM. CODE § 37.006(b) and *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009)). Rather, the UDJA provides only a limited waiver for challenges to the *validity* of an ordinance or statute. *Town of Shady Shores v. Swanson*, 590 S.W.3d at 552. UDJA claims requesting other types of declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying action. *Id.*

The BCESDs plead for declarations separable into two categories. The first category of declarations relates to the development agreements themselves. These include: (1) contract formation questions; (2) procedural questions relating to the development agreements (e.g., COSA's authority and proper execution); and (3) whether the landowners breached development agreements in the first instance. This category of declarations requests involves questions relating to the construction of and validity of the development agreements—not the Ordinance. Because they are not questions regarding the validity of the Ordinance, the UDJA's limited waiver is plainly inapplicable. *See id.* Additionally, governmental immunity bars declaratory claims seeking to nullify a contract made for COSA's benefit. *See City of San Antonio v. Von Dohlen*, 612 S.W.3d 503, 507 (Tex. App.—San Antonio 2020, pet. granted) ("[G]overnmental immunity will preclude the suit if its purpose or effect is to cancel or nullify a contract made for the benefit of the state. In other words, where 'the only plausible remedy' for the plaintiff's claim is invalidation of a government contract, governmental immunity bars both suit and liability."). Importantly, the BCESDs are also not parties to the development agreements and lack standing under Chapter 37 to sue under them. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a) (applying to a person "interested under" a written contract); *see also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007) (per curiam); *Grinnell v. Munson*, 137 S.W.3d 706, 712–14 (Tex. App.—San Antonio 2004, no

pet.). In sum, the UDJA does not waive immunity with respect to first category of declarations pled by the BCESDs.

The second category of declarations substantively restate the issues we have already addressed. These include: (1) sufficiency of the notices to the BCESDs; (2) whether development agreements were offered to all landowners; and (3) the status of the development agreements as "void" upon breach pursuant to their own terms. We have held that these claims lack an independent basis to claim waiver under the applicable statutory provisions discussed above. Consequently, these claims lack a basis to claim waiver of immunity with respect to the underlying action. *See Shady Shores*, 590 S.W.3d at 552. And because these requests do not challenge the *validity of the Ordinance*, the UDJA does not independently waive immunity. *See id.* Thus, the UDJA does not waive immunity with respect to the second category of declarations pled by the BCESDs.

Accordingly, we hold the BCESDs failed to meet their burden of establishing waiver of immunity under Chapter 37 and overrule the BCESDs' arguments to the contrary.

## CONCLUSION

On appeal, DE failed to address two independent grounds supporting the trial court's judgment. The BCESDs failed to demonstrate a waiver of COSA's immunity. We affirm the judgment of the trial court.

Lori I. Valenzuela, Justice